# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41736

STATE OF IDAHO, )
)
    Plaintiff-Appellant, ) Lewiston, April 2015 Term
)
v. ) 2015 Opinion No. 54
)
ALESHA ANN GREEN, ) Filed: June 22, 2015
)
) Stephen W. Kenyon, Clerk
Defendant-Respondent. )
_____ )

> Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Melissa Moody, District Judge.
>
> We vacate the district court's Order Granting Motion to Suppress Evidence and remand the case for further proceedings.
>
> Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Russell J. Spencer argued.
>
> Sara B. Thomas, State Appellate Public Defender, Boise, for respondent. Ben P. McGreevy argued.

_____

J. JONES, Justice

The State appeals the district court's order granting a motion to suppress evidence. The defendant, Alesha Green, was stopped in her vehicle and subsequently arrested for driving without a valid driver's license. A search incident to that arrest produced incriminating evidence against her. The district court suppressed the evidence, finding that the arrest was an unreasonable seizure under the Idaho Constitution.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

In October 2012, an Ada County Sheriff's officer stopped a vehicle for failing to maintain its lane. The officer identified the driver as Green, and it was subsequently discovered that Green was driving with an invalid driver's license, which Green admitted to knowing. The

officer testified at Green's preliminary hearing that he had no reason to believe Green was someone other than who she identified herself to be, nor did the officer have reason to believe Green would not appear for court. Although driving without a valid license in violation of Idaho Code section 49-301 is a misdemeanor offense, according to an Idaho statute it is not an arrestable offense unless certain conditions are met, which were not met here. Nonetheless, the officer arrested Green. The resulting search of Green's person produced alleged drugs and drug paraphernalia. Additionally, a large amount of cash was discovered during the search of Green's vehicle. Once transported to the Ada County Jail, Green made incriminating statements and gave consent to search her hotel room, where police found a digital scale and small plastic bags.

Green was charged with a number of drug-related offenses under two different case numbers. She moved the district court to suppress the evidence found as a result of her arrest in both cases. The district court granted Green's motion, finding that the arrest was "unlawful," therefore violating Green's rights under Article I, Section 17 of the Idaho Constitution. The State timely appealed.

## II.
## ISSUES ON APPEAL

This appeal presents two interrelated issues for decision:

1. Whether a misdemeanor arrest in violation of Idaho Code section 49-1407 is unreasonable under Article I, Section 17 of the Idaho Constitution.

2. If not, must any evidence obtained incident to such an arrest be suppressed.

## III.
## ANALYSIS

### A. Standard of review.

When reviewing a trial court's ruling on a motion to suppress evidence, this Court defers to the trial court's findings of fact unless clearly erroneous. *State v. Donato*, 135 Idaho 469, 470, 20 P.3d 5, 6 (2001). However, we exercise free review over whether a constitutional violation has taken place in light of those facts. *Id.*

### B. Analysis.

The district court found Green's arrest was unreasonable under Article I, Section 17 of the Idaho Constitution because it did not comply with Idaho Code section 49-1407.[1] The court

---

[1] Idaho Code section 49-1407 provides:

Whenever any person is halted by a peace officer for any misdemeanor violation of the provisions

2

reasoned that to hold the arrest in this case was reasonable under the Idaho Constitution would essentially transform Idaho arrest statutes into no more than guidelines the police could freely disregard without risk of suppression. Concluding there was a violation of the Idaho Constitution and that there was not an alternative remedy to deter similar action by police in the future, the district court ordered that the evidence be suppressed.

On appeal, the State argues there is no basis for interpreting the Idaho Constitution differently than the U.S. Constitution with respect to the standards for a reasonable arrest. In support of its position, the State argues (1) the uniqueness of Idaho as a state, which has been one of this Court's reasons for deviating from Fourth Amendment jurisprudence in the past, has no application in the context of arrest standards; (2) the language of the Fourth Amendment and Article I, Section 17 of the Idaho Constitution are nearly identical; and (3) there is no long-standing Idaho jurisprudence that justifies a differing interpretation. The State therefore concludes that, because the arrest was reasonable under the Federal Constitution, it was likewise reasonable under the Idaho Constitution. Green replies that Idaho's long-standing jurisprudence shows Article I, Section 17 is more protective than the Fourth Amendment where there is a violation of state law that impacts constitutional rights. We agree with the State and hold that there has been no constitutional violation here. We further hold that suppression is not the appropriate remedy for statutory violations that do not amount to constitutional violations.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article I, Section 17 of the Idaho Constitution nearly identically guarantees that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated." Warrantless

---

of this title and is not required to be taken before a magistrate, the person shall, in the discretion of the officer, either be given a traffic citation or be taken without unnecessary delay before the proper magistrate as specified in section 49-1411, Idaho Code, in the following cases:

(1) When the person does not furnish satisfactory evidence of identity or when the officer has reasonable and probable grounds to believe the person will disregard a written promise to appear in court.

(2) When the person is charged with a violation relating to the refusal of a driver of a vehicle to submit a vehicle to an inspection and test.

(3) When the person is charged with a violation relating to the failure or refusal of a driver of a vehicle to submit the vehicle and load to a weighing or to remove excess weight therefrom.

Green was arrested for violating Section 301 of Title 49, and the arresting officer admits that none of the exceptions allowing arrest under section 49-1407 applied.

searches and seizures are presumptively unreasonable under both the federal and Idaho constitutions unless they come within one of the established exceptions to the warrant requirement. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *State v. Henderson*, 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988).

One such exception under both state and federal law allows officers, incident to a lawful arrest, to search the arrestee's person and the area within the arrestee's immediate control. *Chimel v. California*, 395 U.S. 752, 762–63 (1969); *State v. Pruss*, 145 Idaho 623, 628, 181 P.3d 1231, 1236 (2008). In the context of the Federal Constitution and its interpreting case law, an arrest is "lawful" if "officers have probable cause to believe that a person has committed a crime in their presence" even if such an arrest does not comply with state statutes governing arrests. *Virginia v. Moore*, 553 U.S. 164, 174–78 (2008). Individual states are free to interpret their own constitutions as providing greater protection to citizens and greater limitation on police conduct than does the Federal Constitution. *Id.* at 172; *Donato*, 135 Idaho at 472, 20 P.3d at 8. We recently stated in *CDA Dairy Queen, Inc. v. State Insurance Fund* that, absent "clear precedent or circumstances unique to the state of Idaho or its constitution" that would justify finding Idaho's constitution to have a meaning different from that of the Federal Constitution, the "Court will use federal rules and methodology" to interpret the Idaho Constitution. 154 Idaho 379, 384, 299 P.3d 186, 191 (2013). However, in some instances, we have found Idaho's Constitution deserving of a unique interpretation "based on the uniqueness of our state, our Constitution, and our long-standing jurisprudence."[2] *Donato*, 135 Idaho at 472, 20 P.3d at 8. A similarity in language and purpose between the Fourth Amendment and Article I, Section 17 of the Idaho Constitution does not require this Court to follow Fourth Amendment jurisprudence in interpreting the Idaho Constitution. *Id.* at 471, 20 P.3d at 7.

Green admitted to the officer that she knew she was driving without a valid driver's

---

[2] For example, in *State v. Webb* we found the definition of "curtilage," as is relevant under an analysis of Article I, Section 17 of the Idaho Constitution, was broader than the United States Supreme Court defined that term for an analysis under the Fourth Amendment. 130 Idaho 462, 467–68, 943 P.2d 52, 57–58 (1997). We reasoned that the broader interpretation more accurately reflected the legitimate expectations of privacy of those in Idaho, a state that is particularly rural in nature. *Id.* In *State v. Thompson*, we held that use of a pen register on a suspect's telephone line was a "search" within the meaning of Article I, Section 17, even though the Supreme Court had held such conduct was not a search under the Federal Constitution. 114 Idaho 746, 748–51, 760 P.2d 1162, 1164–67 (1988). In *State v. Guzman* we found the Idaho Constitution to provide greater protection than its federal counterpart by holding that the Idaho Constitution does not include a good-faith exception to the warrant requirement. 122 Idaho 981, 998, 842 P.2d 660, 677 (1992). *But see Donato*, 135 Idaho at 472, 20 P.3d at 8 (holding there is nothing unique about one's expectation of privacy in one's garbage in Idaho that would justify an interpretation different from the Fourth Amendment. Therefore, we adopted the U.S. Supreme Court's holding on the issue.).

license. Therefore, having witnessed Green driving the vehicle, the police officer had probable cause to believe Green had committed an offense in the officer's presence.[3] This means the resulting arrest was "lawful" as far as complying with the Federal Constitution. However, the arrest did not comply with Idaho Code section 49-1407, which provides that only a citation may be given for Green's violation under the circumstances. The question then becomes whether an arrest that complies with the Federal Constitution because it was made based on probable cause, but that does not comply with an Idaho statute governing arrest, is "lawful" in the context of Article I, Section 17 of the Idaho Constitution.

Provisions of the Idaho Constitution must be construed in light of the law prior to their adoption. *Higer v. Hansen*, 67 Idaho 45, 55, 170 P.2d 411, 416 (1946); *see also* Idaho Const. art XXI, § 2 ("All laws now in force in the territory of Idaho which are not repugnant to this Constitution shall remain in force until they expire by their own limitation or be altered or repealed by the legislature."); *State v. Mathews*, 129 Idaho 865, 869, 934 P.2d 931, 935 (1997) (stating substantive rights present in Idaho law prior to the Idaho Constitution were "affirmed by Article XXI, Section 2 of the Idaho Constitution"). Because the constitutional guarantee against unreasonable seizure of the person includes an arrest, the Idaho Constitution incorporated the principles regarding arrest in the Idaho statutory and common law in 1890 when the constitution was adopted. At that time, the law governing warrantless arrests by peace officers in Idaho was found in Title III, Chapter V, Section 7540 of the Idaho Revised Statutes, which provided:

> A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:
> 1. For a public offense committed or attempted in his presence.
> 2. When a person arrested has committed a felony, although not in his presence.
> 3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it.
> 4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested.
> 5. At night, when there is reasonable cause to believe that he has committed a felony.

Therefore, arrests made under the circumstances specified in this statute should be accepted as constitutionally reasonable under the Idaho Constitution.[4] *See State v. Hart*, 66 Idaho 217, 157

---

[3] The offense Green committed was a violation of Idaho Code section 49-301, which is a misdemeanor. I.C. § 49-301(1), (8). Green does not argue that she was not in violation of this statute.
[4] These five provisions of Idaho's traditional warrantless arrest standards remain in identical form in current Idaho

P.2d 72 (1945) (finding that defendant's arrest complied with I.C. § 19-603 and, therefore, rejecting defendant's argument that his arrest was constitutionally[5] unlawful).

Because "public offense" in Section 19-603(1) includes misdemeanor offenses, *State v. Bowman*, 124 Idaho 936, 940, 866 P.2d 193, 197 (Ct. App. 1993), an officer who arrests a person for a misdemeanor offense committed in the officer's presence has made a reasonable seizure under Article I, Section 17 of the Idaho Constitution. This standard coincides with the federal standard for a reasonable arrest, articulated by the United States Supreme Court a number of times: "when an officer has probable cause to believe a person committed even a minor crime in his presence, . . . [t]he arrest is constitutionally reasonable." *Moore*, 553 U.S. at 171.

Since the time the Idaho Constitution was adopted, the Idaho Legislature has enacted several more statutes governing arrests in Idaho under various circumstances. *See, e.g.*, I.C. §§ 19-603(6)–(7) (allowing warrantless misdemeanor arrests for offenses not committed in officers' presence when committed on an airplane or when the offense is one of several specified violent misdemeanors), 49-1407 (limiting officers' discretion to arrest for certain minor offenses unless specified circumstances are met), 39-6312(2) (providing that an officer may make a warrantless arrest for a misdemeanor violation of a protection order even if that violation did not occur in officer's presence). However, the enactments and amendments of these statutes were not required to be made through the same rigorous standard as an amendment to the Idaho Constitution. *See* Idaho Const. art XX, § 1. Because these subsequently enacted arrest standards did not exist at the time the Idaho Constitution was adopted, and because they were not incorporated by constitutional amendment, they cannot be considered part of the *constitutional* standard for what constitutes a reasonable seizure of the person. To hold otherwise would essentially allow the Legislature to amend the Idaho Constitution by the process of a statutory enactment or amendment. Because these subsequently enacted arrest standards are merely statutory, constitutional remedies are inappropriate when those statutes have been violated by police. Although the Legislature could certainly specify suppression as the remedy for police violation of one of these statutes, because such a statutory violation is not a constitutional

Code section 19-603(1)–(5).

[5] Though the Court in *Hart* does not expressly mention Article I, Section 17 of the Idaho Constitution, an analysis under that authority is implied because the case discusses only the Idaho Constitution and not the Federal Constitution and because the remedy discussed in that case was suppression of evidence, which applies only to constitutional violations unless otherwise specified by statute. Therefore, when the *Hart* Court considered whether the arrest was unlawful, it was presumably doing so to determine whether there was a reasonable search and seizure under Article I, Section 17 of the Idaho Constitution.

violation, suppression is not warranted absent such a legislative directive.

Green argues Idaho's long-standing jurisprudence holds there is a constitutional violation where a statutory violation by police impacts one's constitutional rights, citing *State v. Rauch*, 99 Idaho 586, 586 P.2d 671 (1978); *State v. Mathews*, 129 Idaho 865, 934 P.2d 931 (1997); and *State v. Card*, 137 Idaho 182, 45 P.3d 838 (2002). Each of these cases will be discussed in turn. Green argues that her arrest in this case impacted her constitutional rights because the violation of Idaho Code section 49-1407 resulted in an unreasonable full-scale seizure of her person. The State argues that the cases cited by Green are not in the context of arrest standards and are, therefore, not relevant to the determination of the issue at hand. We agree with the State that the cited Idaho case law shows neither "clear precedent" nor "circumstances unique to the state of Idaho or its constitution" that would justify a deviation from the federal arrest standard.

*Rauch* involved police officers' failure to comply with Idaho statutes requiring that, before they enter a person's home, they must announce their presence, demand entry, and state the purpose for such entry. 99 Idaho at 588, 586 P.2d at 673; *see also* I.C. §§ 19-611 (requiring these actions in the context of arrests), 19-4409 (requiring these actions in the context of executing a search warrant). In *Rauch*, we upheld the trial court's suppression of evidence obtained as a result of the officers' entry into the home without knocking and announcing their presence. *Rauch*, 99 Idaho at 593–94, 586 P.2d at 678–79. Green argues the *Rauch* Court held that a statutory violation impacting constitutional rights means the search/seizure in violation of the state statute is constitutionally unreasonable. Although Green is correct that much of the Court's analysis in *Rauch* is phrased as though the Court's holding was based on only the statutory violation, that holding must be considered in light of the Court's discussion of the historical foundations of current knock-and-announce statutes.

As discussed above, constitutions are to be interpreted in light of the statutory and common law that existed at the time of their adoption. In deciding that suppression was the appropriate remedy, the *Rauch* Court noted the long common-law history of knock-and-announce requirements, stating "[f]rom earliest days, the common law limited the authority of law enforcement officers to break the door of a house to effect an arrest." *Id.* at 592, 586 P.2d at 677. In support of this position, the Court cited to an English case dating back to 1603. *Id.* The Court stated that these protections, long-guaranteed by the common law, are what have resulted in the current statutory codifications of the knock-and-announce standards. *Id.* In the final

statement of its holding, the Court (quoting the United States Supreme Court) made multiple references to the long history of knock-and-announce requirements:

> The requirement of prior notice of authority and purpose before forcing entry into a home *is deeply rooted in our heritage* and should not be given grudging application. Congress, codifying a *tradition embedded in Anglo-American law*, has declared in [18 U.S.C. §] 3109[6] the reverence of the law for the individual's right of privacy in his house. . . . Because the petitioner did not receive that notice before the officers broke the door to invade his home, the arrest was unlawful, and the evidence seized should have been suppressed.

*Id.* at 593–94, 586 P.2d at 678–79 (quoting *Miller v. United States*, 357 U.S. 301, 313–14 (1958) (footnote and emphasis added).

In light of the Court's discussion of knock-and-announce requirements that were present at the time the Idaho Constitution was adopted, the more accurate interpretation of the Court's holding is that the officers' failure to knock and announce violated principles incorporated into the Constitution at the time it was adopted. It is this direct violation of principles inherent in the Constitution that resulted in the constitutional remedy of suppression. Further suggesting that the violation in *Rauch* was more than simply a statutory violation and did in fact amount to a constitutional violation, is the Court's language stating that "[t]he rule is well settled in this state that evidence, procured in violation of defendant's *constitutional immunity* from search and seizure, is inadmissible and will be excluded." *Id.* at 592, 586 P.2d at 677 (quoting *State v. Conner*, 59 Idaho 695, 703, 89 P.2d 197, 201 (1939)) (emphasis added). We also favorably quoted from a dissent by Justice Morgan in *State v. Anderson*, 31 Idaho 514, 527, 174 P. 124, 129 (1918), as follows: "evidence procured by an illegal or unreasonable search . . . [is inadmissible] because it was procured by an *invasion of the rights guaranteed to all persons within this state by sec. 17, art. 1 of the Constitution*." *Id.* at 593, 586 P.2d at 678 (emphasis added).

Although the *Rauch* Court did not discuss Idaho's historic codifications of the knock-and-announce requirements, part of the deeply-rooted heritage the Court did mention is the fact that Idaho has had codifications of knock-and-announce requirements nearly identical to those currently in effect since well before the Idaho Constitution was adopted. *See* Idaho Cr. Prac. Act, §§ 131–32, 637 (1864). Like the warrantless arrest standards in Idaho Code section 19-603(1)–(5), the requirement that police knock and announce their presence was incorporated into the

---

[6] 18 U.S.C. § 3109 is a federal knock-and-announce statute.

Idaho Constitution at the time it was adopted. Therefore, whether phrased as a statutory violation or a constitutional violation, when the police in *Rauch* failed to knock and announce their presence, they were violating more than simply a statutory requirement. They were violating rights guaranteed by the Idaho Constitution.

Green argues that *Mathews* also supports her proposed rule that a statutory violation impacting constitutional rights amounts to a constitutional violation. We do not agree. *Mathews* involved police searching a person's home under a warrant issued by a magistrate but mistakenly left unsigned by the magistrate. 129 Idaho at 867, 934 P.2d at 933. When police executed the search warrant, the person living in the home questioned the validity of the search warrant because it was not signed. *Id.* Three Idaho Code sections discussed in *Mathews* show that a search warrant is required to be signed by the issuing judge. *Id.* at 869, 934 P.2d at 935; *see also* I.C. §§ 19-4401, 19-4406, 19-4407. One of the issues before the Court on appeal was whether the Idaho Constitution required the judge's signature on the warrant in order for the search to be constitutionally reasonable. *Mathews*, 129 Idaho at 868–69, 934 P.2d at 934–35.

Green extracts the following quotes from *Mathews* to support her claims: "[t]his Court from its earliest interpretation of Article I, § 17 of the Idaho Constitution, has held that the right afforded individuals to protection of their persons and homes is so fundamental as to require strict adherence to the constitutional *and statutory requirements*," and "[u]nder [Article I, Section 17], it is uniformly held that the search-warrant must conform strictly to the constitutional *and statutory provisions* providing for its issuance." *Id.* at 869, 934 P.2d at 935 (emphasis added). However, these statements do not mean that *any* statutory violation by police will result in a search or seizure being constitutionally unreasonable. The *Mathews* Court noted that the principles found in the code sections requiring a warrant to be signed were part of Idaho law prior to the adoption of the Idaho Constitution. *Id.* These and other provisions "create a substantive right in a citizen to refuse to permit a search pursuant to an unsigned warrant[, and t]his substantive right existed prior to the adoption of this State's Constitution." *Id.* The Court further reasoned that this pre-existing "substantive right was affirmed by Article XXI, Section 2 of the Idaho Constitution." *Id.* Although some of the Court's language in *Mathews* could be interpreted to mean the existence of a statutory violation by police may equate to a constitutional violation, this rule is limited to statutory principles incorporated into Article I, Section 17 because they were present at the time of the Constitution's adoption. It is, therefore, not the

9

violation of the statute that offends the Constitution; the offense comes from violating principles incorporated into Article I, Section 17. The fact that those principles also continue to be codified in the Idaho Code and there is also a violation of that code does not mean the violation is not constitutional in nature. This limitation of the *Mathews* holding to violations of principles in effect at the time the Constitution was adopted is consistent with the statutory violations discussed above, such as knock-and-announce statutes and pre-existing arrest statutes.

Additionally, subsequent Idaho case law has further clarified the *Mathews* holding. In *State v. Bicknell* we stated that the holding in *Mathews* was not based upon the fact that warrant-signature statutes were violated. 140 Idaho 201, 204, 91 P.3d 1105, 1108 (2004). Rather, the holding was based upon violation of one's substantive constitutional right to refuse a search under an unsigned warrant. *Id.*; *see also State v. Zueger*, 143 Idaho 647, 650, 152 P.3d 8, 11 (2006); *State v. Branigh*, 155 Idaho 404, 415, 313 P.3d 732, 743 (Ct. App. 2013), *rev. denied* (Dec. 9, 2013), *cert. denied*, 134 S. Ct. 1342 (2014). The subsequent clarifications of the *Mathews* holding show that, contrary to Green's argument, a statutory violation impacting constitutional rights is not enough to justify suppression. The violation must actually be constitutional in character.

Green next turns to *Card* in support of her argument. In *Card*, the question was whether the passive involvement of police in executing a search warrant justified suppression of evidence where those persons doing the brunt of the work associated with executing the warrant were not police officers. 137 Idaho at 185, 45 P.3d at 841. Three Idaho statutes relevant to the facts of *Card* required that the officer mentioned in the warrant's directions be the person to serve, execute, and return the warrant. *Id.*; I.C. §§ 19-4408, 19-4413, 19-4415. These statutes also allowed others to aid the officer if the officer required it, as long as they are acting at the officer's direction and while the officer is also present and acting in the warrant's execution. *Card*, 137 Idaho at 185, 45 P.3d at 841; I.C. §§ 19-4408, 19-4413, 19-4415. The Court found a violation of the statutes mentioned above and upheld the district court's suppression of the evidence. *Card*, 137 Idaho at 187, 45 P.3d at 843. In so holding, the Court stated:

> the statutes relating to issuance, execution and returns of search warrants supplement the constitutional prohibition against unreasonable searches and seizures. Violation of the statutory scheme in this case resulted in an unreasonable search and seizure with respect to Card's office and home. Suppression of the evidence is an appropriate remedy to discourage the government agents from engaging in unreasonable searches and seizures in violation of the state

constitution.

*Id.*

In support of the *Card* Court's holding that the statutory violations amounted to constitutional violations that warranted suppression, the only Idaho case law cited by the Court was *Mathews* and *Rauch*. *Id.* at 185, 187, 45 P.3d at 841, 843. *Card* was decided without the benefit of the Court's subsequent decisions clarifying the holding in *Mathews*, and it appears *Card* relied on an incorrect reading of that case. As discussed above, both *Mathews* and *Rauch* were actually based on violations of constitutional principles that were made part of a constitutional analysis because those principles were in effect at the adoption of the Constitution. The fact that the principles *also* remain codified in the Idaho Code simply meant there was both a statutory *and* a constitutional violation. The suppression was justified pursuant to the constitutional violation. *Mathews* and *Rauch*, therefore, do not support the Court's holding in *Card*. Additionally, *Card* has never been cited by this Court, and the only published Idaho appellate decision to cite *Card* suggests that *Card* has been abrogated. *See Branigh*, 155 Idaho at 414, 313 P.3d at 742. The *Branigh* court noted that the Idaho Supreme Court cases subsequent to *Card*, have "uniformly h[e]ld that suppression is required only for constitutional violations," not for actions that violate only state statutes, and *Card* "appears to have been abrogated by later decisions." *Id.* Because the Court's holding in *Card* was based on a misinterpretation of prior case law, we disavow the reasoning found in that case to the extent that it stands for the proposition that a violation of state statute warrants suppression without the violation amounting also to a constitutional violation.[7]

Finally, the district court found, and Green argues, the evidence in this case should be suppressed because, otherwise, Green is left without an adequate remedy for being subject to an arrest that violated state statute. However, as stated by Justice Schroeder in his dissent in *Card*, suppression of evidence is a court-created remedy to ensure compliance with constitutional standards, and it is not appropriate to extend that remedy to violations that are merely statutory. 137 Idaho at 188, 45 P.3d at 844 (Schroeder, J., dissenting). Although it is concerning that a

---

[7] It is worth noting that, although the Court's reasoning in *Card* was flawed, the Court reached the correct result. This is because, as in *Mathews* and *Rauch*, the three statutory sections at issue in *Card* also have historical, pre-Constitution counterparts, meaning the principles in these three statutes were incorporated into the constitutional protections at the time of the Constitution's adoption. I.C. § 19-4408 was originally codified at Cr. Prac. 1864 § 636. I.C. § 19-4413 was originally codified at Cr. Prac. 1864 § 641. And, I.C. § 19-4415 was originally codified at Cr. Prac. 1864 § 643. Therefore, the violations that occurred under the facts of *Card* did amount to constitutional violations, rather than simply violations of statutes.

violation of Idaho Code section 49-1407 appears to allow no significant remedy for defendants, or repercussion for police, such concerns do not bring the violation within the ambit of being "constitutional" in character. If the Legislature intends a violation of Section 49-1407 to result in suppression, it is the responsibility of that body to so provide.

As stated at the outset, we recently reiterated that in order for the Idaho Constitution's interpretation to deviate from the interpretation of the U.S. Constitution, there must be clear precedent to that effect or circumstances unique to the state of Idaho or its Constitution that would compel such a result. Neither the district court nor Green has identified circumstances unique to Idaho or its Constitution in this case. Although Green cites several Idaho cases, arguing that long-standing Idaho jurisprudence establishes that suppression is appropriate where there has been a statutory violation that impacts one's constitutional rights, an examination of those cases reveals that Green's position is without merit. Whether or not discussed by the Court in its respective decisions, each statute directly at issue in *Rauch*, *Mathews*, and *Card* has a historical, pre-constitution source of the currently codified principles. Therefore, suppression in each of those cases was justified by a direct violation of principles inherent in the Idaho Constitution. There is no historical counterpart to Idaho Code section 49-1407 that was present at the time the Idaho Constitution was adopted. Therefore, it cannot be said that the principles in that section limiting certain warrantless misdemeanor arrests to specific circumstances are constitutional in nature. Likewise, a violation of that statute is not a constitutional violation. Because there was no pre-constitution counterpart to Section 49-1407, a violation of this section is merely *statutory* in nature. And, because there was no constitutional violation in this case, suppression was inappropriate.

## IV.
## CONCLUSION

We vacate the district court's suppression order and remand the cases for further proceedings.


Chief Justice BURDICK, and Justices EISMANN and HORTON CONCUR.


W. JONES, J. specially concurring,

While I feel constrained by the legal precedent to join the majority, I do so reluctantly because it troubles me that Green is left with no meaningful remedy after being subject to an

12

arrest and search in violation of a plainly worded statute. While Green's arrest was properly supported by probable cause under the Idaho Constitution, it clearly violated Idaho Code section 49-1407[8]. This statute specifically states that a citizen cannot be arrested for the misdemeanor offense of driving without a valid driver's license. It is highly unlikely that the Legislature contemplated that an arrest made in violation of this statute could be used as a basis for a search incident to the same. While it is mind-bending to label the search here as one incident to a "lawful" arrest when the arrest plainly violates Idaho law, the Legislature failed to expressly include the constitutional remedy of suppression of evidence to cure a violation of the arrest statute. Although this Court cannot fashion a constitutional remedy for a statutory violation, this lack of a meaningful remedy is especially unsettling in the context of the police-citizen exchange where the distinction between a constitutional and statutory harm is likely beyond the grasp of the average citizen.

Even though the statute here expressly prohibits the arrest of a person for driving with an invalid license, the lack of statutory authority does not negate an officer's constitutional authority to arrest for a misdemeanor committed in his presence. Thus, I ultimately agree with the majority's logic and holding. However, I also agree with the trial court's observations that, absent suppression of evidence, Green is left with no meaningful remedy. In enacting similar arrest statutes, other states specifically provide remedies in the same, such as suppression of evidence or a civil tort action. Idaho Code section 49-1407 does not prescribe any remedies for a citizen who is arrested in violation of the statute. While I would like to read the logical remedy of suppression into this situation, I am constrained by precedent and agree with the majority's rationale that this Court simply cannot read a constitutional remedy into the statute.

---

[8] Idaho Code section 49-1407, entitled "When peace officer has option to take person before magistrate," outlines:

> Whenever any person is halted by a peace officer for any misdemeanor violation of the provisions of this title and is not required to be taken before a magistrate, the person shall, in the discretion of the officer, either be given a traffic citation or be taken without unnecessary delay before the proper magistrate as specified in section 49-1411, Idaho Code, in the following cases:
>
> (1) When the person does not furnish satisfactory evidence of identity or when the officer has reasonable and probable grounds to believe the person will disregard a written promise to appear in court.
>
> (2) When the person is charged with a violation relating to the refusal of a driver of a vehicle to submit a vehicle to an inspection and test.
>
> (3) When the person is charged with a violation relating to the failure or refusal of a driver of a vehicle to submit the vehicle and load to a weighing or to remove excess weight therefrom.

I.C. § 49-1407.

Notwithstanding, I wish to take this opportunity to point out that the commission of any misdemeanor in violation of title 49 of the Idaho Code could subject a driver to an arrest and search without any meaningful remedy. Should a driver commit one of these offenses in the presence of law enforcement, he too could be arrested and searched incident to the same in violation of Idaho Code section 49-1407 without any mechanism to enforce his rights under the same. Such a driver has no remedy for this otherwise "unlawful" arrest and search, especially if this search produces evidence of criminal activity. This is disconcerting. I suspect that most persons will not be upset by the search in this case given that Green was ultimately found to be in possession of contraband. However, my underlying purpose in writing separately is to point out that ordinary, law-abiding citizens should be mindful that they too can be subject to all the accoutrements of arrest (i.e. fingerprinted, photographed, searched) for committing any misdemeanor in an officer's presence, including those specifically prohibited by the Legislature. The arrest and booking process is invasive, time consuming, and embarrassing. This invasion of a citizen's rights in violation of the statute, even though not prohibited by the Constitution, is difficult to justify. Had the search of Green turned up no additional evidence of criminal activity, Green would be in a different and less precarious position—but still without a meaningful remedy for these intrusions.

In suppressing the evidence obtained in the search incident to Green's arrest, the district court cited this Court's stated purposes for the exclusionary rule: to "provide an effective remedy to persons who have been subjected to an unreasonable government search and/or seizure." *State v. Guzman*, 122 Idaho 981, 993, 842 P.2d 660, 672 (1992). However, *Guzman* does not apply to this action. Because *Guzman* discusses the exclusionary rule in the context of violations of Article I, Section 17 of the Idaho Constitution, the purposes for the rule discussed necessarily relate to situations where there has been a *constitutionally* unreasonable search and seizure. Here, Green's seizure was constitutionally reasonable and there is no legal support for the trial court's finding that the violation of Idaho Code section 49-1407 amounts to a constitutional violation.

Thus, while the law is clear that there was no constitutional violation in this case, it is troubling that Green, and other potential law-abiding citizens arrested and searched in violation of the same statute, are left with no meaningful remedies for an officer's violation of the arrest statute. I agree with the expressed concerns of the district court that the majority's holding essentially transforms Idaho arrest statutes into mere guidelines that the police can disregard with

impunity and without risk of liability or suppression of evidence. Given the interpreting cases, however, this Court is not in a position to provide Green with the relief she seeks. Only the Legislature, by expressly including suppression of evidence as a remedy into the statutory scheme, can provide Green and other citizens similarly situated with this remedy. For these reasons, I join the majority's decision, but seek to emphasize my concerns regarding the absence of fair notice and clarity to the citizens of Idaho, as well as the lack of any real consequences or meaningful remedies for violations of this statute.