# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47865

JASMINE KRYSTALL REAGAN,           )
                                   )
    Petitioner-Respondent,         )           Boise, January 2021 Term
                                   )
v.                                 )           *Amended* Opinion filed: March
                                   )           23, 2021
IDAHO TRANSPORTATION               )
DEPARTMENT,                        )           Melanie Gagnepain, Clerk
                                   )
    Respondent-Appellant.          )

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Jay P. Gaskill, District Judge.

The judgment of the district court is affirmed.

Susan K. Servick, Attorney at Law, Coeur d'Alene, for Appellant. Susan Servick argued.

Fred R. Palmer, Sagle, for Respondent. Fred R. Palmer argued.

_____

MOELLER, Justice

In this case we are asked to revisit our recent decision in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019), and determine whether its holding is applicable in an administrative proceeding regarding the suspension of driving privileges based on an alleged case of driving under the influence ("DUI"). The Idaho Transportation Department ("ITD") has appealed a district court's decision overturning its one-year suspension of Jasmine Reagan's ("Reagan") driving privileges. ITD based the administrative license suspension ("ALS") on Reagan's arrest for misdemeanor driving under the influence of alcohol and the results of subsequent testing of her blood alcohol content ("BAC"). The arresting officer, acting on a citizen's report of a possible intoxicated driver, did not personally witness Reagan operating or in control of a

Page 1

vehicle. Reagan failed field sobriety tests administered at her home and, after being arrested, failed a breathalyzer test.

Reagan received notice that her driver's license was suspended for one year, which she appealed. An administrative hearing officer for ITD, relying on Idaho Code section 49-1405, upheld the license suspension. However, on appeal the Bonner County district court overturned the suspension pursuant to our decision in *Clarke*, reasoning that because the misdemeanor DUI was completed outside the officer's presence, the arrest required a warrant. On appeal, this Court considers (1) whether the breathalyzer test was administered pursuant to a lawful arrest, and (2) if the arrest was unlawful, whether test results obtained pursuant to an unlawful arrest are admissible in an ALS hearing before the ITD.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On March 2, 2019, a concerned citizen phoned the Ponderay Police Department about a possible intoxicated driver, reporting that a black Subaru with the license plate "SHRED7B" had almost gone into the ditch and into oncoming traffic several times and that the female driver of the vehicle appeared "wasted" and had a pale face and red eyes, like she had been crying. The vehicle was registered to Reagan. The citizen followed the vehicle when it briefly pulled into a gas station, and then continued to follow the vehicle until it pulled into a driveway, which was Reagan's residence. Dispatch advised the citizen to continue on, and the citizen did so, giving her name and agreeing to testify about the incident in court, if necessary.

Corporal Jeremy Deal ("the officer") of the Ponderay Police Department was then dispatched to the address. Eric Blomdahl ("Blomdahl"), Reagan's boyfriend, was in front of the house. According to the officer, he asked Blomdahl whether Reagan had been driving the car, and Blomdahl responded that she had. The officer said he then requested that Blomdahl ask Reagan to come outside and Blomdahl obliged. Blomdahl's testimony portrayed a different version of events. He stated that Reagan's car had been home for some time, and he speculated that the engine was probably not even warm. Blomdahl testified that the officer told him repeatedly they could "do this easy, or do this hard" while waving the butt of a Maglite flashlight at him, and "did kind of back [Blomdahl] into the corner," making him feel he had no choice but to get Reagan.

According to the officer's affidavit, Reagan then told the officer she had been driving down Schweitzer Road from Pucci's Pub where she worked, and she admitted that she had drunk a couple of "shifties"—two 5% alcohol ciders—before driving home. The officer noted that Reagan's speech was slurred, she swayed on her feet, appeared glassy eyed, and seemed to have an impaired memory because at first she said she had had just one drink. Reagan agreed to participate in field sobriety tests—a horizontal gaze nystagmus evaluation, three walk-and-turn evaluations, a one-leg-stand evaluation, a counting evaluation, and an alphabet evaluation—and she failed all of them.

The officer then escorted Reagan to the patrol car, handcuffed her, and placed her in the backseat, telling her that she was under arrest for DUI. Inside the patrol car, he played a recording of the ALS advisory form and waited the requisite fifteen minutes while parked outside Reagan's home before administering a breathalyzer test. Reagan's breath sample showed her BAC was 0.188/0.198. The officer again informed Reagan she was being arrested for driving under the influence, and transported her to the Bonner County Detention Facility.

## B. Procedural Background

Reagan was charged with a misdemeanor DUI and issued a Notice of Suspension of her drivers' license for one year pursuant to Idaho Code section 18–8002A. Reagan subsequently requested an ITD hearing. In that course of proceedings, the hearing officer denied Reagan's request to subpoena recordings of the statements made to the police by a citizen who reported Reagan as a reckless driver. ITD upheld the license suspension. On appeal, the district court reversed the license suspension, holding that the hearing officer's decision concerning the legality of the stop was arbitrary, capricious, or an abuse of discretion because Reagan's arrest was not legal. Further, the district court held that the hearing officer's determination that there was legal cause to find that Reagan had been driving under the influence of alcohol was also arbitrary, capricious, or an abuse of discretion and was not supported by substantial evidence.

## II. STANDARD OF REVIEW

A hearing under Idaho Code section 18–8002A results in an "agency action" and is therefore governed by the Idaho Administrative Procedure Act. I.C. § 67–5240; *see also Wanner v. State, Dep't of Transp.*, 150 Idaho 164, 167, 244 P.3d 1250, 1253 (2011). "A party aggrieved by the decision of the hearing officer may seek judicial review of the decision in the manner

provided for judicial review of final agency action provided in chapter 52, title 67, Idaho Code." I.C. § 18–8002A(8). "On appeal, this Court reviews agency decisions directly, independent of the district court's determination." *Wanner*, 150 Idaho at 167, 244 P.3d 1253 (quoting *Allen v. Blaine Cnty.,* 131 Idaho 138, 141, 953 P.2d 578, 581 (1998). On petition for judicial review of an agency action, the reviewing court cannot substitute its judgment for that of the agency in regard to the weight of the evidence on questions of fact. I.C. § 67–5279(1). The reviewing court must affirm the agency's decision unless it finds the agency's findings, inferences, conclusions, or decisions are: "(a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion." I.C. § 67–5279(3).

### III. ANALYSIS

This case requires us first to consider whether Reagan's initial investigative detention was lawful. If so, we must then consider whether the BAC test results used to justify the administrative suspension of Reagan's license were obtained lawfully and, if not, whether ITD may nonetheless rely on those results in an ALS hearing.

**A. The hearing officer did not err in determining the officer's initial investigative detention was lawful.**

Reagan asserts that the officer did not have legal cause to initially contact her based on the citizen's tip. An investigative detention must be based on reasonable suspicion, derived from specific, articulable facts that a person has committed or is about to commit a crime. *Florida v. Royer,* 460 U.S. 491, 498 (1983). This determination is based on the totality of the circumstances. *United States v. Cortez,* 449 U.S. 411, 417 (1981). Information from an eye-witness which contains certain indicia of reliability, such as the name of the informant, a willingness to testify, and provides a basis for her knowledge that law enforcement reasonably believes to be reliable or can corroborate through investigation, establishes a sufficient basis under the Fourth Amendment to initiate an investigative detention. *See Alabama v. White,* 496 U.S. 325, 330 (1990); *Illinois v. Gates,* 462 U.S. 213 (1983); *Adams v. Williams,* 407 U.S. 143, 146–47 (1972).

There was substantial evidence in the record to support the ITD hearing officer's determination that the officer had the requisite reasonable suspicion to investigate further. The

hearing officer correctly observed that the officer was justified in relying on the citizen's tip: not only had the caller provided her contact information and said she would testify, but the information that a woman was driving Reagan's Subaru recklessly was corroborated by the officer's initial contact with Reagan, when Reagan told the officer she had a couple of drinks before driving home, and the officer noted Reagan's slurred speech, and that she swayed on her feet and appeared glassy eyed. Inasmuch as there was nothing unlawful about the officer's initial investigation, the hearing officer's conclusion that the officer acted upon reasonable suspicion complied with Idaho Code section 67–5279(3).

Reagan also argues that the officer's conduct amounted to a seizure inside her home in violation of the Fourth Amendment because Blomdahl was intimidated into acting, against his will, as the officer's agent in asking Reagan to come outside. Again, we find this is not so. We have previously held that Fourth Amendment scrutiny is not triggered unless an encounter with an officer is nonconsensual. *State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009) (citing *Florida v. Bostick,* 501 U.S. 429, 434 (1991)). There was substantial evidence in the record, including bodycam footage from the arresting officer, to support the ITD hearing officer's conclusion that Blomdahl acted voluntarily when he went inside the house and asked Reagan to come outside to speak with the officer, and that Reagan acted voluntarily when she exited the house, spoke with the officer, and submitted to field sobriety testing. Accordingly, we hold that the officer's encounters with Blomdahl and Reagan met constitutional standards up to and during Reagan's field sobriety testing.

**B. The BAC evidence used by ITD to support the administrative suspension of Reagan's license was obtained pursuant to an illegal arrest.**

    1. <u>Idaho Code section 49-1405(1)(b) violates the Idaho Constitution and cannot be used to justify an arrest for misdemeanor DUI completed outside the presence of the officer.</u>

The ITD hearing officer's decision cited Idaho Code section 49-1405 to justify Reagan's warrantless misdemeanor arrest for a crime committed outside of the arresting officer's presence. Section 49-1405(1) provides that, when a person is charged with one of the following enumerated serious offenses, the arresting officer has the same authority as upon arrest for a felony:

        (a) Negligent homicide.

(b) *Driving, or being in actual physical control, of a vehicle or operating a vessel while under the influence of alcohol or other intoxicating beverage.*

(c) Driving a vehicle or operating a vessel while under the influence of any narcotic drug, or driving a vehicle or operating a vessel while under the influence of any other drug to a degree which renders the person incapable of safely driving a vehicle.

(d) Failure to stop, or failure to give information, or failure to render reasonable assistance, in the event of an accident resulting in death or personal injuries.

(e) Failure to stop, or failure to give information, in the event of an accident resulting in damage to a vehicle or vessel or to fixtures or other property legally upon or adjacent to a highway or waterway.

(f) Reckless driving.

(g) Fleeing or attempting to elude a peace officer.

(Emphasis added). Important to this case is that section 49-1405 authorizes a warrantless arrest for DUI to the same extent that an officer may lawfully arrest for a felony, even if the officer did not witness the offense.

Initially, we acknowledge a misapplication of the statute in question by the ITD hearing officer. The hearing officer made some concerning misstatements[1] in his Findings of Fact and Conclusion of Law in order to justify Reagan's initial *seizure* due to reckless driving under section 49-1405(1)(f); however, the statute pertains only to *arrests*.[2] Nonetheless, the hearing officer, without citing the correct subsection—49-1405(1)(b), which refers to driving under the influence—also found that the officer "possessed legal cause for Reagan's lawful arrest, legal cause to believe Reagan was driving under the influence of alcohol. . . ." It is undisputed that once the matter progressed to an arrest, the officer arrested Reagan for DUI. Section 49-

---

[1] For example, the hearing officer made the following findings: (1) "Although Reagan was not charged with reckless driving, she was in fact guilty of reckless driving," and (2) "Reagan violated I.C. §§ 49-1401, 49-637 and 49-630." The enumerated code sections from Title 49 specifically concern reckless driving and maintaining one's lane. It should be axiomatic that Reagan cannot be guilty of crimes for which she was never charged, let alone tried and convicted. There is simply no factual basis in the record to support these findings, as required by Idaho Code section 67–5279(3)(d).

[2] The hearing officer's factual findings assert that, after contacting Blomdahl, the officer "possessed reasonable articulable suspicion and the authority to arrest Reagan for reckless driving." This finding is clearly erroneous for two reasons. First, regardless of the offense, probable cause remains the standard for arrest, not reasonable suspicion. Second, by the officer's own account, Reagan was arrested for DUI—not for reckless driving—so the district court was correct in concluding that the hearing officer's legal conclusion had no application to the actual facts of this case.

1405(1)(b) would appear to authorize the arrest, even if the officer did not witness the offense. However, as Reagan has correctly asserted in her brief on appeal, "[a] suspected DUI is among those 'serious offenses' listed in Idaho Code section 14-1405(1) [sic]. As such, a DUI is subject to the same Constitutional analysis as those 'serious' crimes described in Idaho Code section 19-603(6) [addressed in *Clarke*]." Therefore, in order to properly address this issue, we must take up the constitutionality of Idaho Code section 49-1405(1)(b).

In *Clarke*, this Court concluded that, based upon predecessor statutes and the common law in 1889, "the framers of the Idaho Constitution understood that Article I, section 17 prohibited warrantless arrests for completed misdemeanors." *Clarke* at 399, 446 P.3d at 457. *Clarke* specifically considered Idaho Code section 19-603(6), a statutory subsection added by the Legislature in 1979, which allowed for a warrantless arrest for misdemeanor assault or battery completed outside the officer's presence. *Id.* at 396, 446 P.3d at 454. We explained how that code provision violated the state constitution:

> Article I, Section 17 of the Idaho Constitution has long been interpreted in conjunction with Idaho Code section 19-603 and its predecessor statutes, which were in place at the time of the adoption of the Idaho Constitution. *See State v. Green*, 158 Idaho 884, 888, 354 P.3d 446, 450 (2015). This statute articulates the bases upon which an arrest may be made in this state. Until 1979, the interpretation of the Constitution and the statutes that preceded Idaho Code section 19-603 largely echoed the general rule of federal cases—that a warrantless arrest was lawful if the arresting officer had probable cause to believe a felony had been committed or if the offender had committed a misdemeanor in the presence of the officer. *Id.; State v. Polson*, 81 Idaho 147, 152, 339 P.2d 510, 513 (1959) (officer may arrest a person if he has probable cause to believe that person committed a felony); *State v. Conant*, 143 Idaho 797, 799-800, 153 P.3d 477, 479-80 (2007) (officer may make a warrantless arrest when a person has committed a public offense in the presence of a peace officer).

*Id.* We observed that "preexisting statutes and the common law may be used to help inform our interpretation of the Idaho Constitution, but they are not the embodiment of, nor are they incorporated within, the Constitution." *Id.* at 397, 446 P.3d at 455. Accordingly, the predecessor statute of section 19-603 informed our understanding that the framers intended that the Idaho Constitution require a warrant to arrest for a completed misdemeanor. *Id.* at 399, 446 P.3d at 457. Despite important public policy implications for domestic violence, this Court concluded that section 19-603(6) violated the Idaho Constitution.

Similarly, in the case at bar, section 49-1405(1) allows an officer the same authority to make arrests for misdemeanors that are deemed serious offenses as if the person were charged with a felony.[3] The predecessor to Idaho Code section 49-1405 was created in 1955 to deal specifically with serious misdemeanors related to motor vehicles. As in *Clarke*, we acknowledge that important public policy considerations are present here, as well. Nonetheless, section 49-1405(1)(b) must "be construed in the light of the law prior to [its] adoption," *Id.* at 397, 446 P.3d 455 (quoting *Green*, 158 Idaho at 888, 354 P.3d at 450). In other words, just as in *Clarke*, section 49-1405(1)(b) must be construed in light of our understanding—based on its predecessor statutes—that the framers of the Idaho Constitution did not intend to allow warrantless arrests for misdemeanors committed outside an officer's presence. In short, because there was no exception at the time of Idaho's statehood to the warrant requirement for misdemeanors committed outside an officer's presence, public policy must yield to constitutional considerations. Therefore, we hold that section 49-1405(1)(b) violates the Idaho Constitution because it contradicts the framers' intention that misdemeanors completed outside an officer's presence require a warrant for an arrest. Accordingly, inasmuch as Reagan was arrested without a warrant for a misdemeanor DUI completed outside the officer's presence, section 49-1405(1)(b) did not provide a legal basis for the arrest.

2. The act of submitting to (or refusing) evidentiary testing is not an element of a completed misdemeanor DUI under Idaho Code section 18-8004.

In *Clarke*, we observed that "the framers of the Idaho Constitution understood that Article I, section 17 prohibited warrantless arrests for *completed* misdemeanors." *Clarke*, 165 Idaho at 399, 446 P.3d at 457 (emphasis added). However, we observed that the common law also reflected that an officer had a duty to arrest, without a warrant, if she possessed "reasonable cause to believe appellant was committing, or was about to commit, a crime . . . ." *Id.* Idaho Code section 18-8002A describes the procedures for testing drivers for alcohol, drugs, or other intoxicating substances, and the license suspension protocol if a driver fails such a test. ITD argues that, because section 18-8002A requires that the driver fail a BAC or other sobriety test in order to proceed with an ALS, then the misdemeanor has not actually been completed—and,

---

[3] We note that this appeal only raises the constitutionality of Idaho Code section 49-1405(1)(b) and, therefore, do not specifically address the other subsections of the statute.

thus, a warrantless arrest is permissible—until the BAC test has been administered and failed. We cannot agree.

The "fail[ure] to complete or pass evidentiary testing" is a prerequisite for an administrative suspension of driving privileges under section 18-8002A. However, under Idaho Code section 18-8004, the act of submitting (or not) to a BAC test is not an element of the crime of driving under the influence; rather, it is the act of driving with a BAC in excess of the legal limit. Idaho Criminal Jury Instruction 1000 states: "In order for the defendant to be guilty of Driving Under the Influence the state must prove" the defendant was driving or in actual control of a motor vehicle:

> while under the influence of (a combination of) (alcohol) (or) (drugs) (or) (an intoxicating substance).]
>
> [or]
>
> [while having an alcohol concentration of 0.02 or more as shown by analysis of the defendant's (blood) (urine) (breath), and the defendant was under the age of 21 years.]
>
> [or]
>
> [while having an alcohol concentration of (0.04) (0.08) (0.10) (0.20) or more as shown by analysis of the defendant's (blood) (urine)(breath).]

I.C.J.I. 1000; *see also* I.C. § 18-8004. Thus, the act of submitting to evidentiary testing cannot be construed as a component of the underlying crime of DUI. Rather, it is the evidence obtained as a *result* of the test—not the administering of the test itself—which is used to establish impairment.

Here, since Reagan was no longer in a vehicle, she was clearly not driving while impaired when the officer observed her. It defies reason to suggest that the alleged crime of DUI was still ongoing until Reagan was tested, even though she was in her home making dinner when she was arrested. Further, because the investigating officer decides when to administer evidentiary testing, following ITD's approach would effectively allow an officer to dictate by his or her own actions when a misdemeanor was completed. Such an outcome is constitutionally untenable. Accordingly, we hold that Reagan was arrested for a misdemeanor completed outside the officer's presence.

3. <u>The breathalyzer test was administered to Reagan in connection with an unlawful arrest.</u>

It is undisputed that the officer arrested Reagan for a misdemeanor DUI without a warrant, even though the officer did not observe Reagan driving or in control of a vehicle. We have described above that, according to the Idaho Constitution, such an arrest requires a warrant. Therefore, the arrest was unlawful. Next, we must ascertain whether Reagan was unlawfully arrested when she submitted to the BAC test—in other words, we must determine whether the evidence used in the ALS proceeding was obtained pursuant to an unlawful arrest. Here, the record shows that rather than merely detaining Reagan prior to administering the breathalyzer test, the officer twice informed her she was "under arrest," handcuffed Reagan, and placed her in the back of his vehicle.

When determining whether an arrest or an investigative detention has occurred, we consider the context of the crime, the stop, and the precautions necessary to an officer's safety. Important factors include "the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds." *State v. Ferreira*, 133 Idaho 474, 480, 988 P.2d 700, 706 (Ct. App. 1999). We have noted that "[w]ithout question, the drunk driver is one of society's greatest concerns" and, therefore, a serious crime. *State v. Henderson,* 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988). However, police must still use the least intrusive means reasonably available to conduct an investigative detention. *State v. Buti*, 131 Idaho 793, 796, 964 P.2d 660, 663 (1998) (quoting *Royer,* 460 U.S. at 500). Therefore, if an officer exceeds the bounds of what is reasonably intrusive to investigate a drunk driving incident, we must find that the officer's actions converted the investigative detention into an arrest.

Here, the officer handcuffed Reagan before placing her in the back of the patrol car. Handcuffing a suspect alone does not automatically convert an investigative detention into an arrest where "the use of handcuffs was a reasonable precaution for the officer's safety." *State v. Pannell*, 127 Idaho 420, 423–24, 901 P.2d 1321, 1324–25 (1995) (quoting *State v. Johns,* 112 Idaho 873, 878, 736 P.2d 1327, 1332 (1987)). However, the threshold for showing that handcuffs were a reasonable precaution for officer safety is high. *Id.* at 424, 901 P.2d 1325. In *Johns*, we found the use of handcuffs did not convert an investigative detention into an arrest because the officer was alone with Johns, who was believed to have killed someone with a knife, Johns had removed a knife from his vehicle, the officer found a second knife when he frisked Johns, and

when the officer attempted to remove the knife, Johns had slightly resisted. *Id.* By contrast, in *Pannell*, we found that handcuffing Pannell and placing him in a patrol car converted an investigative detention into an arrest. *Id*. at 424–25, 901 P.2d at 1325–26. Pannell had been involved in a domestic disturbance; however, he was not found to pose a threat to the officer, and therefore the handcuffs were not a reasonable precaution for officer safety. *Id*. at 423–24, 901 P.2d at 1324–25.

Here, the act of handcuffing Reagan exceeded the bounds of what was reasonably intrusive in conducting an investigative detention and so requires this Court to conclude that the use of handcuffs converted the investigative detention into an arrest. Nothing indicates that Reagan posed any threat to officer safety. Indeed, the officer made no attempt to articulate that such a threat even existed. The alleged crime did not involve violence. By all accounts, Reagan was preparing dinner for her family when the officer arrived, and then she answered the officer's questions and submitted to the field sobriety tests with no resistance. Reagan had no known weapons. She did not threaten the officer. Unlike a typical DUI stop in which a suspect is pulled over after an officer witnesses driving irregularities, to this point the officer had not observed Reagan commit *any* violation of the law. Thus, the use of handcuffs alone would have been sufficient to require us to find that the officer arrested Reagan prior to administering the BAC test.

Nevertheless, the officer went a step further—he informed Reagan she was "under arrest" prior to administering the BAC test. The account from the officer's affidavit, and confirmed by the bodycam footage, records the events as follows:

> *I advised Reagan she was under arrest for driving under the influence of alcohol and/or Drugs* [sic]. I placed handcuffs on Reagan at my patrol vehicle, checked them for proper fit and double locked them. Reagan was placed in the rear seat of my patrol vehicle. While Reagan was seated in the rear of my patrol vehicle, I played the ALS advisory form, from CD, in English. I checked Reagan's mouth for foreign objects locating none. I began the 15 minute observation period by my wrist watch. At the end of the 15 minute observation period Reagan provided a breath sample of BrAC [sic] 0.188/0.198. I advised Reagan she was being charged with driving under the influence of alcohol and/or drugs.

(Emphasis added). There can be no doubt that Reagan was arrested prior to probable cause being established. Additionally, by the officer's own account, Reagan was arrested—as opposed to detained—on suspicion of a DUI charge the officer did not witness. As we held in *Clarke*, the

Idaho Constitution does not permit such an arrest. Thus, the record clearly establishes that the breathalyzer test was administered incident to an unlawful arrest.

### C. ITD erred in relying on test results obtained from an unlawful arrest in affirming Reagan's administrative license suspension.

1. ITD's decision affirming the suspension violates Idaho Code section 18-8002A(7)(a) because the BAC test it relied upon was administered pursuant to an illegal arrest.

Idaho Code section 18-8002A(7) provides that a hearing officer shall not vacate a license suspension unless one of the following is proved, by a preponderance of the evidence:

(a) The peace officer did not have legal cause to stop the person; or

(b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or

(c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or

(d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or

(e) The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

Here, we must consider whether the officer acted within the boundaries of his "legal cause to stop" Reagan for purposes of investigating her, in accordance with section 18-8002A(7)(a) and in light of the legal standards applicable to a misdemeanor DUI. Although an ALS proceeding is an administrative action and not subject to the same rules that would permit a criminal motion to suppress evidence, proceedings under section 18-8002A(7)(a) are nonetheless based on evidence gathered in a criminal investigation, and we interpret the statute as requiring that the stop of the person through which DUI evidence is obtained to be legal. To do otherwise would allow officers who have made an initial legal stop to then gather evidence through subsequent unconstitutional means so long as the evidence would only be used in administrative forums. We cannot permit such undermining of constitutional protections. Accordingly, we read "stop" for

the purposes of section 18-8002A(7)(a) to encompass both the detention and seizure of the person through which evidence is obtained.

Reasonable suspicion of DUI is sufficient to conduct an investigative detention, which may include a breathalyzer test. *See State v. Haynes*, 159 Idaho 36, 45, 355 P.3d 1266, 1275 (2015) (holding that a request by a peace officer that a person submit to a breath test does not constitute an unreasonable search where the officer had reasonable grounds to believe that the person was operating or in actual control of a motor vehicle while under the influence of alcohol). Thus, a breath test administered as part of an investigative detention will qualify as a legal stop under 18-8002A(7)(a). Here, however, the officer did not just detain Reagan prior to administering the breathalyzer test, but he unlawfully *arrested* Reagan *before* administering the test.

We cannot interpret the statute as allowing the initial legality of a stop to serve as an antidote for evidence obtained following a subsequent illegal arrest. The officer still must have legal cause for the portion of the stop during which the relevant evidence was obtained. Accordingly, we hold that although Reagan's initial seizure was legal, it became an illegal stop under section 18-8002A(7)(a) when the unlawful arrest occurred. Thus, the district court correctly vacated ITD's suspension of Reagan's license.

2. <u>ITD's decision affirming the suspension violates Idaho Code section 67-5279(3)(a) because its legal conclusions were inconsistent with the protections afforded under the United States and Idaho Constitutions.</u>

The Idaho Administrative Procedures Act provides the following standard, in part, for a court reviewing an agency action:

> (3) When the agency was required by the provisions of this chapter or by other provisions of law to issue an order, the court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are:
>
> (a) in violation of constitutional or statutory provisions; . . . .

I.C. § 67-5279(3)(a). Even though an ALS hearing is an administrative proceeding to which the Fourth Amendment is not directly applicable, the purpose of an ALS hearing is to evaluate the evidence of BAC obtained as part of a criminal detention or seizure. Therefore, any search by which BAC evidence is obtained for purposes of the ALS must satisfy constitutional standards.

The Fourth Amendment to the United States Constitution, as well as Article I, Section 17 of the Idaho Constitution, protect against unreasonable searches and seizures. The Fourth Amendment has been incorporated through the Due Process Clause of the Fourteenth Amendment to the United States Constitution to apply to the states. *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961). "Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule, which requires unlawfully seized evidence to be excluded from trial." *State v. Cohagan*, 162 Idaho 717, 720, 404 P.3d 659, 662 (2017); *see e.g.*, *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004). This Court has previously recognized that a breath test is a search under the Fourth Amendment; however, when a breath test is conducted as a search incident to arrest, a warrant is not required for the search. *State v. Charlson*, 160 Idaho 610, 615, 377 P.3d 1073, 1078 (2016) (citing *Birchfield v. North Dakota,* 136 S.Ct. 2160, 2173 (2016)).

Here, the officer administered a breath test after an unlawful arrest, and evidence gathered incident to an unlawful arrest violates constitutional standards. Although Reagan consented to the breath test, the voluntariness of her consent is tainted by the illegal arrest. We assess the voluntariness of a consent to search under the totality of the circumstances. *State v. Pool*, 166 Idaho 238, 242-43, 457 P.3d 890, 894–95 (2020) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). "Where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given." *Id.* (quoting *Florida v. Royer*, 460 U.S. at 497). Reagan listened to a recording of the ALS advisory statement, which advised her of the civil consequences if she refused the breath test. However, she listened to this statement while handcuffed, in the back of a patrol car, after having been told that she was already under arrest for DUI. Reagan's understanding of her ability to consent was undermined by the fact that she had already been arrested for a DUI, and there would have been little reason to object to the breath test at that point. Accordingly, we find that her consent to the breath test was not valid.

Idaho Code section 67-5279(3)(a) clearly holds executive agencies to the same constitutional standards as our trial courts. Thus, we hold that because the breath test on which IDT based Reagan's license suspension violated constitutional standards, the district court correctly vacated her license suspension.

**D. This Court need not reach Reagan's procedural due process arguments.**

Reagan argues that she was denied procedural due process during the ITD hearing because the hearing officer failed to issue a subpoena for the recording of the citizen's call to law enforcement, and that this failure was prejudicial. However, inasmuch as we have decided this case in Reagan's favor on other grounds, we need not reach this argument.

**E. Reagan is not entitled to attorney fees on appeal.**

Reagan requests attorney fees as the prevailing party pursuant to Idaho Code section 12-117(1). This section provides:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

*Id.*

We cannot conclude that ITD pursued this appeal without a reasonable basis in law because it relied on Idaho Code section 49-1405, which appeared to authorize a warrantless arrest for a misdemeanor completed outside the officer's presence. The ITD hearing officer's decision was issued several months before *Clarke* was decided. While the constitutionality of section 49-1405 was clearly in question at the time of the proceedings in district court, we nevertheless conclude that the law was still somewhat unsettled at the time this appeal was filed. For example, the applicability of *Clarke* to an administrative license suspension proceeding had not been previously addressed by this Court. Accordingly, we deny Reagan's request for attorney fees on appeal. However, as the prevailing party, costs are awarded to Reagan as a matter of course pursuant to Idaho Appellate Rule 40(a).

## VI.    CONCLUSION

For the forgoing reasons, we hold that Idaho Code section 49-1405(1)(b) violates the Idaho Constitution. Accordingly, we affirm the decision of the district court to overturn ITD's suspension of Reagan's driver's license. Reagan's request for attorney fees is denied, but costs are awarded to Reagan.

Chief Justice BEVAN, and Justices BURDICK, BRODY and STEGNER **CONCUR.**