809 P.2d 515

**STATE of Idaho,**
**Plaintiff–Appellant–Appellant**
**on Appeal,**

v.

**Claudia Jo COOPER,**
**Defendant–Respondent–Respondent**
**on Appeal.**

No. 18484.

Court of Appeals of Idaho.

Feb. 28, 1991.

Rehearing Denied April 19, 1991.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-appellant-appellant on appeal.

Ray Keith Roark of Roark, Donovan, Praggastis, Rivers & Phillips, Hailey, for defendant-respondent-respondent on appeal.

SWANSTROM, Judge.

Claudia Cooper was charged with driving under the influence and reckless driving after she wrecked her car in Blaine County. A magistrate granted Cooper's motion to suppress the results of a breath test and statements made by her to law enforcement officers. The state appealed and the district court affirmed. The state appealed again. The questions we must determine are whether the magistrate erred in finding that Cooper was under "arrest" for purposes of the *Miranda* warnings when Cooper admitted that she had been drinking, and whether the officers had probable cause to arrest Cooper and to request that she submit to a breath alcohol test. Because we answer both of these questions affirmatively, we reverse and remand.

■ "Preliminarily, our standard of review of a district court decision where the district court is sitting in an appellate capacity is one of free review." *State v. Moore*, 111 Idaho 854, 855, 727 P.2d 1282, 1283 (Ct.App.1986); *State v. Swartz*, 109 Idaho 1033, 712 P.2d 734 (Ct.App.1985). We must defer to the findings of fact of the trial court when they are supported by substantial evidence, but in deciding whether the facts as found constitute probable cause, we exercise de novo review. *State v. Montague*, 114 Idaho 319, 756 P.2d 1083 (Ct.App.1988).

The record of the suppression hearing reveals the following facts. Cooper was involved in a one car roll-over accident on Deadman's Curve north of Hailey, Idaho, on February 13, 1989. Blaine County Deputy Sheriff Charles Reimann investigated the accident. He arrived on the scene just before an ambulance crew took Cooper to the hospital for medical treatment. The officer did not speak to Cooper at the scene. He did interview two motorists, who related that Cooper had been traveling at a high rate of speed when her car crossed into their lane of traffic, out of control, and flipped over onto its top.

At the scene, Deputy Reimann found no evidence that would lead him to believe that Cooper had been driving under the influence of alcohol. While still at the scene, however, the officer received a call from a deputy dispatcher at the sheriff's office. In that communication, the dispatcher relayed that an off-duty emergency medical technician, who had just observed Cooper at the hospital following the accident, had suggested that a blood alcohol test might be warranted in this case.

With this information, Deputy Reimann made radio contact with two Hailey police officers, Haynes and Biggs, who were patrolling in a city police car, requesting that they go to the hospital to obtain a blood sample from Cooper. When the officers arrived, Cooper had been treated and was being released. The officers met Cooper in a public waiting area and talked with her there. Police Officer Dennis Haynes testified about this meeting as follows:

> I observed that she was a bit mussed. You could smell some type of alcoholic beverage. At that time I wasn't aware what it would be. One of the questions I think that was asked by Officer Biggs was whether she had been drinking or not, and she responded that she had been; wine. She was fairly coherent. Other than that, I don't recall a lot about the incident at the hospital.

Cooper described the accident to the officers and told them she was the driver. Officer Haynes did not obtain a blood sample at the hospital, nor did he arrest Cooper. Haynes radioed Deputy Reimann who was about to leave the scene of the accident. Reimann requested Haynes to transport Cooper to the sheriff's office for the purpose of administering a breath test. About five minutes later, Deputy Reimann met the two police officers and Cooper at the Blaine County sheriff's office, which was a few blocks from the hospital.

Officer Biggs' testimony at the suppression hearing was consistent with that of Officer Haynes. Biggs testified, in part, as follows:

I talked with her for a few minutes while I guess [the hospital's] paperwork was being processed, told her that Officer Reimann was still investigating the accident and that I believed he wanted to talk with her to continue with the investigation on the accident.

I asked her if she had a way to go to the sheriff's office because she had agreed to go, and she said she didn't, so I gave her a ride to the sheriff's office.

Biggs testified that Cooper was not arrested; that she went with him voluntarily, riding in the front seat while Officer Haynes rode in the back of the city patrol car. Neither officer's testimony was disputed in any way. Cooper did not testify at the suppression hearing.

Dennis Patterson testified at the suppression hearing. He worked as an emergency medical technician with the Blaine County Ambulance Service and was also a "reserve officer" with the Blaine County sheriff's office. He testified that he was at the ambulance building when an ambulance and crew responded to Cooper's accident. He later went to the hospital "to see how the ambulance crew had done" on that call and to see "how the patient was." He talked to Cooper briefly before she told him to leave, in a manner that Patterson described as abusive. Patterson testified that he was about two feet from her and "could smell alcohol, a fruity odor, similar to alcohol" coming from her breath or her clothing. He then telephoned the sheriff's office to report that he thought Cooper had been drinking. He suggested that "they bring an alcohol blood analysis kit down."

Deputy Reimann, who had investigated the accident and who had over thirteen years experience in law enforcement, with training for investigating accidents and driving under the influence, testified at the suppression hearing. He said that while he was at the accident scene:

I was advised [by the sheriff's dispatcher] that Dennis Patterson had contacted the office and stated that it appeared that the driver of the vehicle who they just brought in appeared to be intoxicated to him, and we might want to do a blood test.

In evaluating probable cause, the magistrate found that no observations of Cooper had been made by Deputy Reimann at the scene of the accident. As to the information from Patterson which the dispatcher had relayed to Reimann at the scene, the magistrate stated that "none of ... [it] provided probable cause or even a reasonable articulable suspicion to request any further investigation and/or a blood test." We disagree with this statement, at least in part. The report Reimann received through the dispatcher, coupled with information received at the scene of the accident, certainly gave the officer a "reasonable articulable suspicion" warranting "further investigation" into the possibility that the driver had been drinking.

We are troubled by the magistrate's emphatic rejection of Patterson's report. The magistrate rejected his testimony as well, obviously displeased with Patterson's uninvited role in the investigation. Of course, it is the province of the trier of fact to weigh the credibility of the witnesses, and we will not disturb the trial court's findings where they are supported by sufficient evidence. I.R.C.P. 52(a). However, some of the magistrate's findings in regard to this witness are not supported by the evidence. For example, the magistrate found that Patterson was not close enough to Cooper to tell where the "fruity" alcohol odor was coming from. Patterson had testified that he was about two feet away from Cooper, bending over her in order to talk to her, but admitted that he could not tell whether the odor was coming from her breath or her clothing.

The magistrate's findings also discuss, not dispassionately, the "fact" that Patterson had read Cooper's medical chart. The evidence in the record simply does not support such a finding, nor can such an inference reasonably be made from the testimony. We would note that Patterson's testimony was not refuted in any way. More-

over, it was corroborated by Officer Haynes who also testified that, while he was talking to Cooper later at the hospital, he could smell some type of alcoholic beverage, and that Cooper admitted that she had been drinking wine.

■ We find no reason in the record for holding that Deputy Reimann could not rely upon the information that the sheriff's dispatcher had relayed from Dennis Patterson. The record does not tell us whether Deputy Reimann was personally acquainted with Dennis Patterson through the latter's work as an emergency medical technician and a reserve officer of the Blaine County sheriff's office. While this could be a reasonable inference for the trier of the facts to make, we should not make it. We can say, however, that an officer is entitled to rely upon a report from a named citizen informant who apparently has had an opportunity to observe what is being reported. *See, e.g., Effenbeck v. State,* 700 P.2d 811 (Alaska App. 1985). "While a statement that a driver was intoxicated is in part conclusory, it is the kind of shorthand statement of fact that lay witnesses have always been permitted to testify to in court." *Id.* at 813 (citing A.R.E. 701; E. CLEARY, McCORMICK ON EVIDENCE § 11 (2d ed. 1972); 7 WIGMORE ON EVIDENCE §§ 1919, 1974 (Chadbourn Rev.1978)).

There is no doubt, as the magistrate found, that when the officers approached Cooper in the hospital and questioned her concerning the accident, she was the focus of the investigation. The magistrate also concluded that she was then in custody. Accordingly, he determined that *Miranda* was implicated and, because the officers did not advise Cooper of her *Miranda* rights at the hospital, the use of any statements elicited from the suspect during this custodial interrogation could not be used to provide probable cause. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *but see Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (rejecting the notion that the "in custody" requirement was satisfied merely by a police interview of a

person who was the "focus" of a criminal investigation). Correspondingly, the magistrate pinpointed the time of the arrest at the hospital; and he held that, at that time, the officers lacked the requisite probable cause.

We must therefore determine whether the circumstances surrounding the encounter between the officers and Cooper at the hospital amounted to custodial interrogation. As defined in *Miranda,* custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Sandoval,* 92 Idaho 853, 452 P.2d 350 (1969), *quoting Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612. As *Miranda* case law has developed, however, the deprivation of a person's freedom of action must now rise to a "degree associated with formal arrest." *State v. Myers,* 118 Idaho 608, 798 P.2d 453 (Ct.App.1990). *See Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)). If we concur with the magistrate that Cooper was taken into custody while at the hospital, we must necessarily concur in the magistrate's suppression of Cooper's admission that she drank wine, because the statement was obtained without *Miranda* warnings.

The only evidence at the suppression hearing that Cooper was "in custody" at the hospital was provided by the following questions put by defense counsel to Officer Haynes:

Q. And once you arrived there at the Blaine County Medical Center in Hailey, Idaho, did you have occasion to meet with a female person named Claudia Cooper?

A. Yes, I did.

Q. What was your purpose in meeting with her?

A. It was at the request of Deputy Reimann.

Q. Okay. At that time, did you take her into your custody and transport

her to the Blaine County Sheriff's Office for Officer Reimann?

A. Not me personally. Officer Dean Biggs was the officer that was there with me and he took the lead in this investigation as far as our part was concerned.

Q. Did the two of you arrive at the medical center in the same vehicle?

A. Yes, we did.

Q. And that was a Hailey patrol vehicle, was it not?

A. Yes.

Q. So when you say Officer Biggs took the lead, he is the one who actually took Claudia Cooper into his custody and you were just observing?

A. As I recall, yes, sir.

■ It may be argued that this single answer to defense counsel's compound question is substantial evidence on *whether* Cooper was taken into custody, but this answer is not probative of *when* any officer took Cooper "into custody." This issue must be determined by considering all of the evidence relating to the events occurring at the hospital between Cooper and the two police officers. All of the evidence was provided by the police officers themselves and was wholly undisputed. The evidence is clear that Cooper was not arrested or in custody when the officers questioned her about the accident and her drinking. There was no evidence that Cooper was detained at the hospital for a half-hour by the officers. Cooper did not then have a car. No evidence was introduced to show that she had a ride waiting for her or that she was intending to walk home from the hospital. Moreover, under the circumstances shown here, it cannot be said that a short period of detention for the purposes of pursuing an investigation into a serious accident was "unreasonable" in the constitutional sense. The importance of prompt investigation of suspected driver intoxication cannot be ignored. It is a commonly accepted fact that the most relevant and important evidence of intoxication will be lost if not obtained within a relatively short period of time.

We conclude that Cooper's admission was properly obtained and that she was not "in custody" when questioned at the hospital. The findings and conclusions of the magistrate to the contrary are not supported by the evidence or by existing law. *See, e.g., State v. Sandoval, supra* (police and prosecuting attorney questioned appellant at hospital to complete an accident investigation; held, non-custodial); *People v. Milhollin,* 751 P.2d 43 (Colo.1988) (defendant's response to officer's questions regarding alcohol-related traffic investigation conducted in hospital held not to be made in a custodial setting); *State v. Sadler,* 85 Or.App. 134, 735 P.2d 1267 (1987) (in-hospital questioning of defendant where defendant admitted driving the car involved in the accident and blood test showed .193% blood alcohol content held non-custodial); *State v. Kelter,* 71 Wash.2d 52, 426 P.2d 500 (1967) (in-hospital interview of defendant by officer investigating fatal accident held not to be in-custody interrogation). These cases are in accord with the majority view that questioning in hospitals by police is not custodial when the suspect is not under formal arrest. *See generally* 2 W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 27.3(A)(2) (2d ed. 1990 supp.).

■ We now reach the issue of probable cause, which is the crux of the state's appeal. Ordinarily, we look to the knowledge of the officers at the time of arrest. The question then is whether "at the moment the arrest was made, the officers had probable cause to make it." *State v. Cook,* 106 Idaho 209, 215, 677 P.2d 522, 528 (Ct. App.1984), *quoting Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). "Reasonable cause exists where there is such state of facts as would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that such person is guilty." *State v. Loyd,* 92 Idaho 20, 23, 435 P.2d 797, 800 (1967). In the present case, we have held that Cooper was not "under arrest" when she was questioned by police officers at the hospital. We recognize that a change in circumstances occurred when Cooper was transported from the hospital

to the sheriff's office. The officers testified, without dispute, that Cooper was never arrested at the hospital and went with them voluntarily to the sheriff's office. However, we believe it is unnecessary to discuss whether the change in locale resulted in a custodial situation for the purposes of *Miranda*. We conclude that, while Cooper was at the hospital, the officers had probable cause to arrest her for driving under the influence of alcohol and to request her to take a breath alcohol test. I.C. § 18–8002.

In *State v. Cook, supra*, we said:

[I]t should be noted that the arresting officer's information came in part from the police radio. In such circumstances, reasonable cause must be tested upon the full information in police possession which caused the radio messages to be sent, not merely upon the messages themselves. [citations omitted]

106 Idaho at 221, 677 P.2d at 534. This rule has been applied in a number of cases in the State of Washington. *See, e.g., State v. Maesse*, 29 Wash.App. 642, 629 P.2d 1349 (1981). In *Maesse* the court said:

These cases support that aspect of the fellow officer rule which permits probable cause to be determined upon the information possessed by the police as a whole when they are acting in concert. The rule does not require a finding of probable cause to be based solely upon the personal or subjective knowledge of the arresting officer. We agree that in those circumstances where police officers are acting together as a unit, cumulative knowledge of all the officers involved in the arrest may be considered in deciding whether there was probable cause to apprehend a particular suspect.

629 P.2d at 1352. *See also State v. Rubio*, 115 Idaho 873, 876, 771 P.2d 537, 540 (Ct. App.1989); 1 W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 4.3(b) (2d ed. 1990 supp.).

In the present case, two eyewitnesses at the scene informed Deputy Reimann that the accident involved speeding and loss of control by the driver. The sheriff's dispatcher also informed Reimann that Dennis Patterson had observed the driver at the hospital and she appeared to be intoxicated. A few minutes later, Officer Haynes talked to Cooper at the hospital, after she had been treated for injuries. He could smell "some type of alcoholic beverage." He heard Cooper tell Officer Biggs that she had been drinking wine. "She was fairly coherent," according to Haynes. She talked about the accident, admitting that she was the driver. Although neither officer at the hospital asked Cooper to perform any field sobriety tests, there were sufficient facts known to the officers collectively to establish probable cause for her arrest for driving while under the influence. It is obvious from the record, however, that Officers Biggs and Haynes took a secondary role in the investigation because the accident had not occurred within their jurisdiction, that is, within the City of Hailey, and because they were acting at the request of Deputy Reimann. Nevertheless, we hold that the officers had probable cause to arrest Cooper as soon as Cooper admitted drinking and driving.

■ From the facts related above, the officers also had probable cause to have Cooper submit to a breath test. The test later administered at the sheriff's office by Deputy Reimann was authorized by I.C. § 18–8002(1). We deem it immaterial that the officers could have requested a blood sample be taken while at the hospital. It was not unreasonable for the officers to choose a breath test which produced an immediate record of the results. This breath test was only briefly delayed while Deputy Reimann talked to Cooper at the sheriff's office. His own observations confirmed the reports he had already received. Reimann testified that he talked to Cooper about the accident, observed her closely and could smell an odor of an alcoholic beverage on her breath. He stated: "I noted a little bit of her attitude which has been common that I've found with intoxicated persons. Her attitude would go from being happy, carefree, to depressed and crying." He did not administer any field sobriety tests because he thought her injuries might "impair her ability to do" them.

He then told her that he was going to charge her with driving while under the influence. He gave her the *Miranda* warnings and also advised her of the consequences of refusal to take a breath alcohol test. I.C. § 18–8002. Cooper took the test, which yielded results of .15 and .16 percent blood alcohol content. Reimann then issued a citation to Cooper for "driving while intoxicated." I.C. § 18–8004. Cooper signed the citation, agreeing to appear in court on the date stated in the summons. The record indicates that she was then free to leave.

■ Finally, we will address another argument Cooper makes for upholding the suppression order. Cooper contends that the officers failed to comply with I.C. § 19–608 when they "arrested" Cooper. This statute states:

> The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of, or an attempt to commit, an offense, or is pursued immediately after its commission, or after an escape.

Cooper contends the arrest occurred when the officers transported her from the hospital to the sheriff's office, if not before. She argues that because neither Officer Biggs nor Officer Haynes complied with the statute, the arrest was illegal and the evidence obtained as a result of the illegal arrest must be suppressed.

So far as our record shows, this argument was made for the first time in the district court, after the state appealed. Neither the magistrate's suppression decision nor the district court's appellate decision mentions I.C. § 19–608. Nevertheless, because the argument presents an alternative theory for upholding the trial court, we will address it even though the argument apparently was made for the first time on appeal.

As we have already noted, the record contains clear and uncontradicted evidence that neither Officer Biggs nor Officer Haynes intended to arrest Cooper or thought she was under arrest when they transported her to the sheriff's office. Arguably, under such circumstances, the language of the statute requiring the officer to "inform the person to be arrested of the intention to arrest him" does not even apply. It is one thing to say that *Miranda* warnings must be given to an unarrested suspect who is "in custody," but it is quite another to say that the officer must tell the suspect that the officer intends to arrest him when, in fact, the officer has no such intent. Such a rule would force every officer to make an arrest even in those situations—like the present one—where an officer has the statutory right and discretion to issue a citation in lieu of arrest, or to otherwise avoid an immediate arrest by choosing to later file a formal complaint with a request that a summons be issued instead of a warrant of arrest. *See, e.g.,* I.C.R. 4(b), (c). We are not persuaded today to adopt the position taken by Cooper. Neither do we need to decide the issue directly.

In making the above argument, Cooper assumes that a violation of I.C. § 19–608 would result in suppression of all evidence gathered after the "illegal arrest." This assumption rests on a three-tiered foundation: first, that the officers "arrested" Cooper; second, that the arrest violated I.C. § 19–608; and third, that a violation of the statute made the arrest "illegal" or that the violation itself is justification for suppression of evidence obtained as a result of the arrest. In support of these conclusions, Cooper has cited only a civil case which we find to be inapposite to the issues here. *See Sprague v. City of Burley,* 109 Idaho 656, 710 P.2d 566 (1985). In *Anderson v. Foster,* 73 Idaho 340, 345, 252 P.2d 199, 202 (1953) our Supreme Court did hold that "[i]f an officer making an arrest does not inform the person to be arrested of his intention to make the arrest, the cause of the arrest and the authority to make it, *when the person to be arrested requests such,* ... [the] arrest is unlawful." (Emphasis added.)

We have found only one Idaho case which has directly addressed an argument

similar to the one made by Cooper. In *State v. Gibson*, 106 Idaho 54, 675 P.2d 33 (1983), *cert. denied* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984), our Supreme Court refused to invoke the exclusionary sanction where the asserted violation was of a state statute, I.C. § 19–853, rather than a violation of a constitutional right. The Court also noted that the United States Supreme Court "would 'simply decline to extend the court made exclusionary rule to cases in which its deterrent purpose would not be served.'" *Id.*, 106 Idaho at 58, 675 P.2d at 37, *citing Desist v. United States*, 394 U.S. 244, 254, n. 24, 89 S.Ct. 1030, 1036 n. 24, 22 L.Ed.2d 248 (1969).

In the present case, once the officers had probable cause to believe that Cooper had been driving while under the influence of alcohol, they had the right under I.C. § 18–8002 to request that she submit to a breath test. The statute gives the officers this right independent of whether an arrest was made. Thus, we cannot say here that the test results were the product of an illegal arrest. Accordingly, we hold that the exclusionary rule should not be applied, in any event, to the results of the breath test.

Because we have resolved the issue of probable cause in favor of the state, we reverse the order of the magistrate suppressing the admission made by Cooper and the results of the breath alcohol test. We direct that the case be remanded to the magistrate division for further proceedings consistent with this opinion.

WALTERS, C.J., and SILAK, J., concur.