## IN THE SUPREME COURT OF THE STATE OF IDAHO

## DOCKET NO. 47331

STATE OF IDAHO,

    Plaintiff-Appellant,

v.

DALE ALLEN SUTTERFIELD,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2021 Term

Opinion Filed: April 8, 2021

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The district court's orders suppressing evidence and dismissing the felony count of possession of a controlled substance are <u>reversed</u>, and the case is <u>remanded</u> for further proceedings.

Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for respondent. Jenevieve C. Swinford argued.

_____

BRODY, Justice.

This appeal concerns a motion to suppress evidence obtained by the police in a search incident to a citizen's arrest. Dale A. Sutterfield stole a cell phone owned by a restaurant in Garden City, Idaho. A restaurant employee and his co-worker confronted Sutterfield, recovered the cell phone, and subsequently contacted the Garden City police for assistance. After the police arrived, the restaurant employee signed an affidavit and citizen's arrest form. The police arrested Sutterfield for petit theft and conducted a search incident to arrest. During their search, the police found a small quantity of methamphetamine. Thus, Sutterfield was also arrested for possession of a controlled substance, a felony.

Sutterfield filed a motion to suppress the methamphetamine evidence, asserting his arrest and the search incident to that arrest violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. After determining

1

that Sutterfield had been arrested by a peace officer for a completed misdemeanor that occurred outside of the officer's presence in violation of the Idaho Constitution, the district court granted Sutterfield's motion to suppress. The district court dismissed the felony count of possession of a controlled substance, and Sutterfield pleaded guilty to the misdemeanor count of petit theft. The State timely appealed, and, for the reasons set forth below, we reverse the district court's order suppressing the evidence and its order dismissing the felony count of possession of a controlled substance.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Sutterfield entered a restaurant in Garden City to order food and inquire about employment. Prior to leaving with his food, Sutterfield stole a cell phone owned by the restaurant. He then left the restaurant and went to a laundromat located in the same commercial complex. The restaurant employee and his co-worker discovered the cell phone was missing and went to the laundromat to confront Sutterfield. Sutterfield eventually admitted he had taken the cell phone and returned the phone to the restaurant employee. The restaurant employee did not tell Sutterfield he was under arrest or that Sutterfield was going to be arrested. Further, the restaurant employee did not restrain Sutterfield or tell him he needed to remain in the area until the police arrived.

The restaurant employee felt unsafe because he thought Sutterfield might have a weapon. Consequently, the restaurant employee and his co-worker left the laundromat and called 911 from the parking lot. The restaurant employee told the 911 dispatcher what had occurred and indicated that Sutterfield might have a weapon. The police arrived on site three minutes later. The restaurant employee did not talk to Sutterfield after the police arrived.

The first police officer to arrive—Officer Barghoorn—immediately approached Sutterfield without talking to the restaurant employee or his co-worker. Believing that Sutterfield could have a weapon, Officer Barghoorn patted down Sutterfield for weapons and detained him in handcuffs. Sutterfield did not make any aggressive movements before or during the pat down. After being informed of his *Miranda* rights, Sutterfield admitted he stole the cell phone.

Officer Barghoorn then spoke with the restaurant employee and his co-worker. Officer Barghoorn explained that he could issue a citation to Sutterfield or assist the restaurant employee and his co-worker with a citizen's arrest. In response to a question, Officer Barghoorn explained that he could not arrest Sutterfield because the petit theft had not occurred in Officer

2

Barghoorn's presence. After the restaurant employee verbally indicated he wanted Sutterfield arrested, Officer Barghoorn completed two forms for the employee to review and sign—an affidavit and a "Statement of Private Person's (Citizen's) Arrest." The restaurant employee signed both forms and returned the documents to Officer Barghoorn. The citizen's arrest form contained the following language: "As a private person, I [name of the restaurant employee] have arrested Dale Sutterfield for petit theft 18-2407 a public offense committed in my presence at 5163 Glenwood at 1716 on 11/22. I hereby demand that Police Officer(s) Barghoorn transport said Dale Sutterfield to Ada [County] Jail[.]" The affidavit and citizen's arrest form were never given, shown, or read to Sutterfield. Additionally, the restaurant employee never personally informed Sutterfield that he was placing Sutterfield under citizen's arrest.

After the restaurant employee signed the affidavit and citizen's arrest form, Officer Barghoorn returned to the area where Sutterfield was being detained by other officers. Officer Barghoorn testified that he was acting as an agent for the restaurant employee at that point to effectuate a citizen's arrest. To that end, Officer Barghoorn informed Sutterfield he was under arrest. More specifically, the district court found that Officer Barghoorn said, "You are under arrest for petit theft." The district court also found that Officer Barghoorn "did not use the term 'citizen's arrest' when notifying Sutterfield."

After placing Sutterfield under arrest, Officer Barghoorn searched Sutterfield. During the course of the search, Officer Barghoorn removed various items from Sutterfield's pants pockets. After the items had been removed from Sutterfield's pockets, Sutterfield asked, "So they are pressing charges?" Officer Barghoorn responded to Sutterfield's question by saying, "Yep." Sutterfield was then placed in a police vehicle, and Officer Barghoorn examined the items he had removed from Sutterfield's pants pockets. One of the items was a baggy containing a white substance that tested positive for methamphetamine. As a result, Officer Barghoorn informed Sutterfield he was also under arrest for possession of a controlled substance.

Sutterfield filed a motion to suppress the evidence obtained as a result of the search incident to arrest with the district court, asserting that his arrest and the resulting search violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. The district court determined the citizen's arrest was not valid because the restaurant employee and Officer Barghoorn did not fully comply with the notice requirements for a citizen's arrest delineated in Idaho Code section 19-608. For that reason, the

3

district court concluded the arrest was actually a warrantless arrest by a peace officer for a completed misdemeanor that occurred outside of the officer's presence in violation of Article I, Section 17 of the Idaho Constitution. Therefore, the district court granted Sutterfield's motion to suppress.

After the district court granted Sutterfield's motion, it dismissed the felony count of possession of a controlled substance, and Sutterfield pleaded guilty to the misdemeanor count of petit theft. The State timely appealed the district court's order suppressing evidence and its order dismissing the felony count.

## II. STANDARD OF REVIEW

When this Court reviews a trial court's order granting or denying a motion to suppress evidence, the standard of review is bifurcated. *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009)). Unless clearly erroneous, this Court will accept the trial court's findings of fact. *Id.* This Court will, however, freely review the trial court's "application of constitutional principles to the facts as found." *State v. Bodenbach*, 165 Idaho 577, 589, 448 P.3d 1005, 1017 (2019) (quoting *State v. Moore*, 164 Idaho 379, 381, 430 P.3d 1278, 1280 (2018)).

## III. ANALYSIS

The State contends that the district court erred when it granted Sutterfield's motion to suppress because Sutterfield's arrest and the search incident to that arrest were constitutional. Sutterfield asserts that the district court properly granted his motion to suppress because his arrest and the search incident to arrest violated his rights under Article I, Section 17 of the Idaho Constitution. More specifically, Sutterfield contends that his arrest was an arrest by a peace officer, and that Officer Barghoorn violated his constitutional rights by arresting him without a warrant for a completed misdemeanor that Officer Barghoorn had not observed. *See State v. Clarke*, 165 Idaho 393, 399, 446 P.3d 451, 457 (2019) (stating that Article I, Section 17 of the Idaho Constitution prohibits a peace officer from making a warrantless arrest for a completed misdemeanor).

### A. The requirements to effectuate a citizen's arrest.

A private person's right to conduct a citizen's arrest is well established under common law. *See* Ira P. Robbins, *Vilifying the Vigilante: A Narrowed Scope of Citizen's Arrest*, 25 Cornell J.L. & Pub. Pol'y 557, 562 (2016) (discussing the origins of a private person's right to

conduct a citizen's arrest). The common law rules find their origins in English practices dating back to the Middle Ages. *Id.* In the United States of America, many states have now codified the common law rules surrounding a private person's right to conduct a citizen's arrest. *See id.* at 569–72 (discussing statutes in various states). Idaho is one of those states. *See* I.C. § 19-601 ("An arrest may be made by a peace officer or by a private person."). In fact, Idaho's statutes concerning an individual's right to conduct a citizen's arrest were enacted by the territorial legislature well before statehood. *See, e.g.*, Revised Statutes of Idaho Territory, Title III, Chapter V, § 7541 (1887) (stating that a private person may arrest another for certain offenses).

> Under Idaho law, a citizen may arrest another:
>
> 1. For a public offense committed or attempted in his presence.
>
> 2. When the person arrested has committed a felony, although not in his presence.
>
> 3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.

I.C. § 19-604(1)–(3). Unless an exception applies, "[t]he person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it . . . ." I.C. § 19-608. The private person making the citizen's arrest may summon others—including the police—to assist him in carrying out the arrest. I.C. § 19-606; *see also State v. Sutherland*, 130 Idaho 472, 475, 943 P.2d 62, 65 (Ct. App. 1997) (stating that a peace officer may "act as an agent of a citizen who summons assistance in aid of making a citizen's arrest."). Nonetheless, the arrestee must not be subjected to any more restraint than necessary. I.C. § 19-602. Once a private person makes a citizen's arrest, he must act without delay to bring the arrestee before a magistrate or to deliver the arrestee to a peace officer. I.C. § 19-614.

While the tradition of allowing a citizen's arrest is long, misconceptions and urban myths abound when it comes to the circumstances under which a citizen's arrest can be made and how it must be carried out. Today's decision addresses some of those misconceptions, but we caution everyone that a citizen's arrest should not be taken lightly. Failing to adhere to statutory requirements, using more force than is reasonably necessary, and abusing the power can subject the citizen to criminal and civil liability. *See, e.g.*, 32 Am. Jur. 2d False Imprisonment § 36 (stating that a citizen's arrest may result in liability for false imprisonment if the private person making the arrest does not comply with statutory requirements). While a police officer's suggestion that a citation be issued may seem lackluster when someone has suffered the indignity

5

of theft, discerning whether an arrest is actually necessary and wise is imperative. Contrary to popular belief, a citation for a misdemeanor is not a mere traffic ticket. A person can be held accountable for a crime through the issuance of a citation and without an arrest.

**B. The district court erred when it held that Sutterfield was arrested by a peace officer for a completed misdemeanor that occurred outside of the officer's presence in violation of Article I, Section 17 of the Idaho Constitution.**

The district court found that Officer Barghoorn did not inform Sutterfield that he was assisting the restaurant employee with a citizen's arrest. Thus, the district court held that Sutterfield was arrested by a peace officer for a completed misdemeanor that occurred outside of the officer's presence in violation of Article I, Section 17 of the Idaho Constitution. *See State v. Clarke*, 165 Idaho 393, 399, 446 P.3d 451, 457 (2019) ("[T]he framers of the Idaho Constitution understood that Article I, section 17 prohibited warrantless arrests for completed misdemeanors."). The district court explained its reasoning as follows:

> While Officer Barghoorn informed Sutterfield that he was being arrested for petit theft, Officer Barghoorn never indicated in any way to Sutterfield that it was a citizen's arrest made at the direction and request of [the restaurant employee]. While [the restaurant employee's] personal presence was not necessary, Officer Barghoorn was still required to provide notice of the authority of the arrest as a citizen's arrest and that Officer Barghoorn was assisting with the arrest and transport of the defendant under that authority. Could Barghoorn have shown the citizen's arrest form to Sutterfield or read it to Sutterfield to provide sufficient notice? Maybe—but that clearly did not happen in this case. Based upon all evidence presented at the hearing, the State has failed to show by a preponderance of the evidence that Sutterfield was provided adequate notice to effect a valid citizen's arrest under the plain-language of Idaho Code § 19-606 [sic]. Therefore, the evidence before this [c]ourt is that Sutterfield's arrest was an arrest by an officer. Since the arrest was for a completed misdemeanor that did not occur in the officer's presence, it was not a lawful arrest as required by Section 17 of Article I of the Idaho Constitution.

(Footnote omitted).

The State contends that the district court erred when it held that Sutterfield was arrested by a peace officer for a completed misdemeanor that did not occur in the officer's presence in violation of Article I, Section 17 of the Idaho Constitution. Rather, the State argues Sutterfield was arrested by a private person and his agent (Officer Barghoorn), and the citizen's arrest did not violate Sutterfield's constitutional rights. We agree.

Under Idaho law, an arrest is defined as taking a person into custody in a manner authorized by law. I.C. § 19-601. "An arrest may be made by a peace officer or by a private

6

person." *Id.* A private person is authorized to arrest another for a public offense that is committed in his presence. I.C. § 19-604(1). In most instances, however, the person making the arrest must first provide notice to the individual to be arrested. I.C. § 19-608.

> The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of, or an attempt to commit, an offense, or is pursued immediately after its commission, or after an escape.

*Id.* A person making an arrest may request assistance from others, as necessary. I.C. § 19-606. Further, "a police officer can act as an agent of a citizen who summons assistance in aid of making a citizen's arrest." *State v. Sutherland*, 130 Idaho 472, 475, 943 P.2d 62, 65 (Ct. App. 1997).

Here, Officer Barghoorn acknowledged that he could not arrest Sutterfield because the petit theft had not occurred in his presence. Rather, Officer Barghoorn explained that he could issue a citation to Sutterfield or assist the restaurant employee in making a citizen's arrest. The restaurant employee verbally indicated that he wanted to proceed with a citizen's arrest. He then signed an affidavit and a citizen's arrest form. The citizen's arrest form expressly stated that the restaurant employee, as a private individual, was exercising his right to conduct a citizen's arrest: "As a private person, I [name of the restaurant employee] have arrested Dale Sutterfield for petit theft 18-2407 a public offense committed in my presence at 5163 Glenwood at 1716 on 11/22. I hereby demand that Police Officer(s) Barghoorn transport said Dale Sutterfield to Ada [County] Jail[.]" In short, the record shows that the restaurant employee was conducting a citizen's arrest, and that Officer Barghoorn was assisting the employee as his agent.

Further, it is undisputed that the restaurant employee personally observed Sutterfield in possession of the cell phone that was stolen from the restaurant. Thus, under Idaho Code section 19-604(1), the restaurant employee had authority to arrest Sutterfield for petit theft. Moreover, the restaurant employee had authority to summon aid from the police under Idaho Code section 19-606, and Officer Barghoorn had authority to act as the employee's agent to effectuate a citizen's arrest. *See Sutherland*, 130 Idaho at 475, 943 P.2d at 65. The restaurant employee did not personally inform Sutterfield of his intention to conduct an arrest or the cause of the arrest as required by Idaho Code section 19-608, but Officer Barghoorn did so while acting as the employee's agent. Officer Barghoorn specifically told Sutterfield: "You are under arrest for petit theft." Thus, Officer Barghoorn expressly informed Sutterfield of his intention to arrest

7

Sutterfield as required under the first prong of Idaho Code section 19-608. Officer Barghoorn's statement also served to inform Sutterfield of the cause of the arrest—petit theft—as required under the second prong of Idaho Code section 19-608. As the district court noted, however, Officer Barghoorn did not notify Sutterfield that he was assisting a private person with a citizen's arrest. Shortly after the citizen's arrest took place, Sutterfield asked, "So they are pressing charges?" Officer Barghoorn responded by saying, "Yep." That brief exchange was not sufficient to inform Sutterfield of Officer Barghoorn's authority to make the citizen's arrest, however, because it was ambiguous and untimely.

By failing to inform Sutterfield of his authority to make the citizen's arrest, Officer Barghoorn did not fully satisfy the notice requirements delineated in Idaho Code section 19-608. More specifically, Officer Barghoorn did not satisfy the third prong of Idaho Code section 19-608, which requires "[t]he person making the arrest [to] inform the person to be arrested of . . . the authority to make it . . . ." Nevertheless, Officer Barghoorn's oversight does not, *ipso facto*, transform the citizen's arrest into an arrest by a peace officer. There is nothing in Idaho Code section 19-608 or our case law to support such a conclusion. Rather, we must look at all the circumstances surrounding Sutterfield's arrest to determine if it was a citizen's arrest or an arrest by a peace officer. Based on all the circumstances surrounding Sutterfield's arrest, it is evident that the restaurant employee was conducting a citizen's arrest, and that Officer Barghoorn was acting as the employee's agent.

The dissent concludes that Sutterfield was unlawfully arrested at the time Officer Barghoorn placed Sutterfield in handcuffs—well before Officer Barghoorn ever spoke to the restaurant employee. We disagree. First, we note that the parties did not argue that the use of handcuffs during the course of the initial investigation resulted in an unlawful arrest. This argument was not advanced below, nor was it raised on appeal. Second, the dissent's conclusion does not square with the district court's findings of fact, which strongly suggest that Sutterfield was placed under arrest when Officer Barghoorn said, "You are under arrest for petit theft." That event took place well after Sutterfield was placed in handcuffs. We are bound to accept the trial court's findings of fact if they are supported by substantial evidence. *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005) (citing *State v. Holland*, 135 Idaho 159, 161, 15 P.3d 1167, 1169 (2000)).

8

Based on the foregoing, we conclude that Sutterfield's arrest was a citizen's arrest—not an arrest by a peace officer for a completed misdemeanor that occurred outside of the officer's presence in violation of Article I, Section 17 of the Idaho Constitution.

### C. The failure to fully comply with the notice requirements in Idaho Code section 19-608 did not result in a constitutional violation.

The restaurant employee's agent—Officer Barghoorn—was required to notify Sutterfield of his authority to make the citizen's arrest under the third prong of Idaho Code section 19-608. With that said, his failure to do so did not violate Article I, Section 17 of the Idaho Constitution.

#### 1. Officer Barghoorn was required to notify Sutterfield of his authority to make the citizen's arrest.

In most instances, an individual conducting a citizen's arrest "must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it . . . ." I.C. § 19-608. Here, the restaurant employee did not personally inform Sutterfield of his intention to arrest Sutterfield or the cause of the arrest, but Officer Barghoorn did so while acting as the employee's agent. As previously explained, however, Officer Barghoorn failed to notify Sutterfield of his authority to make the citizen's arrest. Thus, the restaurant employee and his agent, Officer Barghoorn, did not satisfy the third prong of Idaho Code section 19-608.

The State contends that the failure to comply with the notice requirements delineated in Idaho Code section 19-608 is of no consequence because Sutterfield did not request notice. To support its argument, the State cites *Anderson v. Foster* for the proposition that a failure to adhere to the notice requirements in Idaho Code section 19-608 is relevant only when the person to be arrested requests such notice. 73 Idaho 340, 345, 252 P.2d 199, 202 (1953). The State argues:

> There is no evidence that Sutterfield made any inquiries about the officer's authority to make the arrest. The closest he came was asking, "So they are pressing charges?" The officer answered this in the affirmative. To the extent this was a question about authority, it shows that the authority was the citizen's because "they" were pressing charges. If the question was not a question about authority it was insufficient to render the arrest unlawful under I.C. § 19-608. *Anderson*, 73 Idaho at 345, 252 P.2d at 202.

The State's reliance on *Anderson* is misplaced. Contrary to the State's assertion, *Anderson* does not stand for the proposition that a failure to adhere to the notice requirements delineated in Idaho Code section 19-608 is relevant *only* when the arrestee expressly requests notice. In *Anderson*, a warrant was issued for the arrest of Iloise Anderson for assault and

9

battery, and she was taken into custody by the police. 73 Idaho at 343, 252 P.2d at 200. *Anderson* claimed she was unlawfully arrested and brought an action to recover damages. *Id.* "The jury believed the testimony of [Anderson] that no warrant was shown to her, that she was not informed of the intention to arrest her or the cause thereof, although she made request and refused to voluntarily submit . . . ." *Id.* at 345, 252 P.2d at 202. In that context, this Court stated:

> If an officer making an arrest does not inform the person to be arrested of his intention to make the arrest, the cause of the arrest and the authority to make it, *when the person to be arrested requests such*, except when the person to be arrested is actually engaged in the commission of, or an attempt to commit, an offense, or is pursued immediately after its commission, or after an escape, such arrest is unlawful.

*Id.* (emphasis added) (citing *Helgeson v. Powell*, 54 Idaho 667, 34 P.2d 957 (1934)). The phrase "when the person to be arrested requests such" reflects the specific facts in *Anderson*, where Anderson expressly inquired about the circumstances surrounding her arrest. There is nothing in *Anderson*, however, that supports the State's assertion that a failure to adhere to the notice requirements in Idaho Code section 19-608 is relevant *only* when the arrestee expressly requests notice.

In sum, Officer Barghoorn, acting as the restaurant employee's agent, was required to notify Sutterfield of his authority to effectuate a citizen's arrest even though Sutterfield did not request such notice. Because Officer Barghoorn failed to inform Sutterfield of his authority to make a citizen's arrest while acting as the employee's agent, the third prong of Idaho Code section 19-608 was not satisfied.

### 2. The suppression of evidence is not an appropriate remedy for a statutory violation that does not rise to the level of a constitutional violation.

The State argues that the failure to comply with the notice requirements in Idaho Code section 19-608 involves a statute—not a constitutional right. The State cites *State v. Cooper*, 119 Idaho 654, 809 P.2d 515 (Ct. App. 1991), for the proposition that courts will refuse to exclude evidence when the violation concerns a state statute instead of a constitutional right.

In *Cooper*, the Court of Appeals addressed "whether the magistrate erred in finding that Cooper was under 'arrest' for purposes of the *Miranda* warnings when Cooper admitted that she had been drinking, and whether the officers had probable cause to arrest Cooper and to request that she submit to a breath alcohol test." *Id.* at 655, 809 P.2d at 516. Cooper argued, in part, that the arresting officers had failed to comply with Idaho Code section 19-608. *Id.* at 660, 809 P.2d

at 521. Hence, she contended that her arrest was illegal, and the evidence obtained as a result of the arrest should be suppressed. *Id.* In its analysis, the *Cooper* court observed that this Court has "refused to invoke the exclusionary sanction where the asserted violation was of a state statute . . . rather than a violation of a constitutional right. *Id*. at 661, 809 P.2d at 522 (citing *State v. Gibson*, 106 Idaho 54, 675 P.2d 33 (1983)).

Similarly, in *State v. Green*, this Court held that the suppression of evidence "is not the appropriate remedy for statutory violations that do not amount to constitutional violations." 158 Idaho 884, 886, 354 P.3d 446, 448 (2015), *abrogated on other grounds by State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019). In *Green*, the defendant was arrested for driving without a valid driver's license. *Id.* at 885, 354 P.3d at 447. "Although driving without a valid license . . . is a misdemeanor offense . . . it is not an arrestable offense unless certain conditions are met, which were not met here. Nonetheless, the officer arrested Green." *Id.* A search incident to that arrest resulted in incriminating evidence against Green. *Id.* The trial court suppressed the evidence after determining that Green's arrest was unlawful and constituted an unreasonable seizure under Article I, Section 17 of the Idaho Constitution. *Id.* This Court held, however, that Green's arrest did not rise to the level of a constitutional violation. *Id.* at 886, 354 P.3d at 448. "[S]uppression of evidence is a court-created remedy to ensure compliance with constitutional standards, and it is not appropriate to extend that remedy to violations that are merely statutory." *Id.* at 892, 354 P.3d at 454 (citing *State v. Card*, 137 Idaho 182, 188, 45 P.3d 838, 844 (2002) (Schroeder, J., dissenting)).

We are mindful that the statute in question here—Idaho Code section 19-608—was enacted prior to the adoption of the Idaho Constitution. *See* Revised Statutes of Idaho Territory, Title III, Chapter V, § 7545 (1887). As we recently clarified, however, "preexisting statutes and the common law may be used to help inform our interpretation of the Idaho Constitution, but they are not the embodiment of, nor are they incorporated within, the Constitution." *Clarke*, 165 Idaho at 397, 446 P.3d at 455. Sutterfield has provided no argument or authority to support the proposition that a failure to satisfy the third prong of Idaho Code section 19-608 violates the provisions of Article I, Section 17 of the Idaho Constitution, and we decline to make such a ruling today. *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (stating that this Court will not consider an issue that is not supported by argument and authority). In fact,

Sutterfield expressly concedes that a failure to comply with the notice requirements in Idaho Code section 19-608, without more, does not constitute grounds for the suppression of evidence.

Similar to the defendant in *Green*, who was placed under arrest even though certain statutory requirements were not satisfied, Sutterfield was placed under citizen's arrest even though the restaurant employee's agent, Officer Barghoorn, did not fully satisfy the notice requirements set forth in Idaho Code section 19-608. Like the facts in *Green*, where a search incident to the arrest resulted in incriminating evidence against the defendant, the search incident to the citizen's arrest here resulted in incriminating evidence against Sutterfield. Similar to the facts in *Green*, where the failure to fully comply with a statutory requirement did not rise to level of a constitutional violation, the failure to fully comply with the statutory notice requirements here does not rise to the level of a constitutional violation, either. To be clear, Officer Barghoorn was required to notify Sutterfield of his authority to make the citizen's arrest under Idaho Code section 19-608. His failure to do so, however, does not constitute a constitutional violation. Consequently, the suppression of evidence is not the appropriate remedy for the reasons articulated by this Court in *Green*.

**D. The search incident to arrest did not violate Article I, Section 17 of the Idaho Constitution.**

Because the district court held that Sutterfield was arrested by a peace officer in violation of the Idaho Constitution, it also held that the evidence obtained in the search incident to that arrest was inadmissible. "Since there was no valid arrest, the officers' search of Sutterfield was not incident to a valid arrest and the evidence obtained in that search—the methamphetamine—was 'fruit of the poisonous tree' and therefore inadmissible under the exclusionary rule."

Article I, Section 17 of the Idaho Constitution, which protects individuals from unreasonable searches and seizures, is analogous to the Fourth Amendment to the United States Constitution. *See State v. Albertson*, 165 Idaho 126, 129, 443 P.3d 140, 143 (2019) (stating that, like the Fourth Amendment to the United States Constitution, the purpose of Article I, Section 17 of the Idaho Constitution is to protect Idaho citizens' reasonable expectation of privacy).

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

Idaho Const. art. I, § 17. Notwithstanding the similarity between Article 1, Section 17 of the Idaho Constitution and the Fourth Amendment to the United States Constitution, "this Court is

free to interpret our state constitution as more protective of the rights of Idaho citizens than the United States Supreme Court's interpretation of the federal constitution." *State v. Guzman*, 122 Idaho 981, 987, 842 P.2d 660, 666 (1992) (citing *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 80–82 (1980)).

"Warrantless searches are presumptively unreasonable unless the search falls within one of the 'specifically established and well-delineated exceptions.' " *State v. Blythe*, 166 Idaho 713, 716, 462 P.3d 1177, 1180 (2020) (quoting *State v. Henderson*, 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988)). "One such exception to the warrant requirement is for searches conducted incident to an arrest." *Id.* (citing *State v. Lee*, 162 Idaho 642, 649, 402 P.3d 1095, 1102 (2017)). This exception also encompasses a search incident to a citizen's arrest. *State v. Lagasse*, 135 Idaho 637, 640, 22 P.3d 112, 115 (Ct. App. 2001) (citing *State v. Sutherland*, 130 Idaho 472, 476, 943 P.2d 62, 66 (Ct. App. 1997)). Evidence obtained in violation of Article I, Section 17 of the Idaho Constitution is subject to the exclusionary rule. *See Guzman*, 122 Idaho at 993, 842 P.2d at 672 ("[T]he exclusionary rule should be applied in order to: 1) provide an effective remedy to persons who have been subjected to an unreasonable government search and/or seizure; 2) deter the police from acting unlawfully in obtaining evidence; 3) encourage thoroughness in the warrant issuing process; 4) avoid having the judiciary commit an additional constitutional violation by considering evidence which has been obtained through illegal means; and 5) preserve judicial integrity.").

Here, it is undisputed that Sutterfield was arrested and searched by Officer Barghoorn without a warrant. The search, therefore, was presumptively unreasonable. *See Blythe*, 166 Idaho at 716, 462 P.3d at 1180. However, because this was a citizen's arrest that did not offend the Idaho Constitution, and not an arrest by a peace officer for a completed misdemeanor that occurred outside of the officer's presence in violation of Article I, Section 17 of the Idaho Constitution, the search-incident-to-an-arrest exception applies. *Lagasse*, 135 Idaho at 640, 22 P.3d at 115. Consequently, Officer Barghoorn was not precluded from conducting a warrantless search of Sutterfield after placing him under citizen's arrest. Moreover, the evidence obtained by Officer Barghoorn during the search incident to the citizen's arrest is not subject to the exclusionary rule. We conclude, therefore, that the district court erred when it granted Sutterfield's motion to suppress.

## IV. CONCLUSION

In light of the foregoing, we reverse the district court's order suppressing evidence and its order dismissing the felony count of possession of a controlled substance. The case is remanded for further proceedings.

Chief Justice BEVAN, and Justices BURDICK and MOELLER CONCUR.


STEGNER, J., dissenting.

I respectfully dissent. I would affirm the district court's grant of Sutterfield's motion to suppress for two reasons. First, the majority errs in focusing only on the citizen's arrest as the potentially unlawful seizure. Sutterfield was effectively under arrest when he was placed in handcuffs, prior to any citizen's arrest. It needs to be remembered that the charge faced by Sutterfield when confronted by the officer was a completed misdemeanor and therefore the officer could not have constitutionally arrested Sutterfield given Idaho's constitution. *State v. Clarke*, 165 Idaho 393, 399, 446 P.3d 451, 457 (2019). Second, the majority places too much weight on the distinction between a "constitutional" and a "statutory" violation, where the violation is the officer's failure to follow a statute establishing the proper procedure for a lawful citizen's arrest. I would conclude that this distinction erodes the protection Article I, section 17 of the Idaho constitution provides against unreasonable searches and seizures.

At the outset it is important to recognize that Sutterfield was seized in a manner amounting to his arrest even before the purported "citizen's arrest" was pursued. We have concluded previously that the use of handcuffs to restrain a suspect exceeds the bounds of an investigatory detention and amounts to an arrest, unless the handcuffs are a reasonable precaution for the officer's safety in the face of a substantial risk of danger or flight by the suspect. *See, e.g.*, *State v. Pannell*, 127 Idaho 420, 423–24, 901 P.2d 1321, 1324–25 (1995). This showing constitutes a "high threshold" to establish that a suspect was not in fact arrested despite being placed in handcuffs. *Id.* at 424, 901 P.2d at 1325. In applying this rule, this Court concluded that this high threshold had been met during a traffic stop where three occupants in a vehicle were "far from cooperative" with the officers, drug activity was suspected, and the traffic stop was met with the driver's attempt to evade the officer's vehicle. *State v. DuValt*, 131 Idaho 550, 554, 961 P.2d 641, 645 (1998). (As should be evident, none of these factors were present in this case.) Conversely, this threshold was not met during a traffic stop where two cooperative

14

occupants in a vehicle were ordered from the car at gunpoint by six officers and then handcuffed. *Compare State v. Buti*, 131 Idaho 793, 797, 964 P.2d 660, 664 (1998).

Here, Officer Barghoorn was informed that the store employees suspected that Sutterfield had a weapon; accordingly, when the officer contacted Sutterfield, he asked Sutterfield if he could pat him down for weapons. Sutterfield consented. No weapons were found by Barghoorn, and Sutterfield made no aggressive movements before or during the officer's contact. Nonetheless, after the pat-down, Officer Barghoorn placed Sutterfield in handcuffs and read him his *Miranda* rights. (The fact that a *Miranda* warning was given also strongly suggests Sutterfield had been arrested and was in custody at that moment. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)) ("It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'".) Once the threat that Sutterfield had a weapon had been dispelled through the pat-down, there was no justification for handcuffing him. He was extremely cooperative. There is no evidence to suggest a substantial risk of danger to the officer or flight which would render handcuffing him a "reasonable precaution." *Pannell*, 127 Idaho at 424, 901 P.2d at 1324. This seizure amounted to a warrantless arrest even before the officer attempted to effectuate the "citizen's arrest." In fact, Barghoorn had handcuffed Sutterfield and *Mirandized* him before speaking to Randolph. As a result, Sutterfield was unlawfully arrested before the officer ever spoke to the "citizen." Consequently, the district court did not err in suppressing the fruits of the search which occurred after Sutterfield's unlawful arrest.

While the district court's decision does not explicitly clarify the point at which arrest occurred, Sutterfield's motion to suppress below contrasted the actions of the citizen (Randolph) and the actions of the officer (Barghoorn) in effecting an arrest, and argued that it was the *officer* who had arrested Sutterfield because the officer had detained and handcuffed him while the citizen made no attempt to seize or restrain him. In its decision below, the district court found that Barghoorn "immediately went over to Sutterfield[,]" conducted a pat-down, and then restrained him in handcuffs without first talking to Randolph. The entire time Barghoorn dealt with the "citizen," Sutterfield was in handcuffs and in custody. The district court then concluded that Sutterfield's arrest was one for a completed misdemeanor in violation of *State v. Clarke* and the Idaho Constitution. Where Sutterfield has claimed on appeal that the entire seizure violated

his constitutional rights, it is just as vital to identify *when* an arrest occurred as it is to identify *how* the arrest was effectuated. Under our case law, the arrest occurred at the time Sutterfield was handcuffed. Even if the district court's decision can be read to conclude that the citizen's arrest was ineffectual, it should be affirmed on the basis of "right result, wrong theory." *See State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). Sutterfield cited *Clarke* in his motion and brief before the district court in arguing that the officer had arrested him without probable cause.[1] *Clarke* is not about a citizen's arrest; it deals with the authority of an Idaho officer to arrest for a completed misdemeanor. Whether the district court misunderstood the breadth of Sutterfield's argument, or instead chose to focus on the insufficiency of the State's "citizen's arrest" justification, it is clear that Sutterfield raised the unconstitutionality of his arrest by Barghoorn.

Second, even if the "citizen's arrest" were the only unlawful arrest implicated in this case, the majority relies too heavily on the difference between a "constitutional" violation (which necessitates suppression of evidence) and a "statutory" violation (which apparently does not). The majority concludes that this violation was "merely" a statutory violation, citing *State v. Green*, 158 Idaho 884, 354 P.3d 446 (2015), *abrogated on other grounds by State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019), for that proposition. However, *Green* cannot be read to hold that a statutory violation is distinct from and will never overlap with a constitutional violation. Instead, *Green* stands for the proposition that where a statutory violation has occurred, this Court will examine the statutory source to determine whether the violation amounts to a constitutional violation. One aspect of this analysis is whether the principles behind the statute are constitutional in nature. *Green*, 158 Idaho at 892, 354 P.3d at 454. Even as the majority acknowledges that the procedures associated with a citizen's arrest originated well before Article I, section 17 of the Idaho Constitution was adopted, the majority also reasons that Sutterfield should have presented more authority and argument why violating the third prong of Idaho Code section 19-608 violated the Idaho constitution. In the first place, it is not the citizen's obligation to establish that a police officer's action was unconstitutional. It is the State's obligation to prove its agent's action was constitutional, either by establishing that the arrest was under a warrant or

---

[1] "Under the Idaho Supreme Court's ruling in *State v. Clarke*, [165 Idaho 393, 446 P.3d 451 (2019)], an officer is not authorized to make an arrest without a warrant for a misdemeanor not committed in his presence, notwithstanding the existence of probable cause."

by showing an exception to the warrant requirement. *See State v. Smith*, 144 Idaho 482, 485, 163 P.3d 1194, 1197 (2007). Only upon that showing would the burden shift to Sutterfield. In addition, even assuming for purposes of argument that Sutterfield bore this burden, he has argued that each aspect of the citizen's arrest statute constitutes part of the framers' expectation for a citizen's arrest. The argument is that what is now Idaho Code section 19-608, codified and incorporated what was required of a citizen's arrest for it to pass constitutional muster under the Idaho constitution.

As relied upon by the majority, the distinction between "constitutional" and "statutory" violations results in the virtual elimination of statutory requirements. A citizen's arrest which does not comply with the statutory requirements for a citizen's arrest is by definition an unlawful arrest. It should go without saying that a search incident to lawful arrest, which is the basis for the search of Sutterfield, requires a *lawful* arrest. *See State v. Lee*, 162 Idaho 642, 649, 402 P.3d 1095, 1102 (2017) ("[L]aw enforcement officers may search an arrestee incident to a lawful custodial arrest."). The majority can and should grapple with these bedrock principles. I also question the majority's conclusion that we should analyze a "constitutional" violation differently than a "statutory" violation. This is a distinction without a difference. By drawing this distinction, the majority effectively allows Idaho police officers to violate Idaho's laws, and to do so with impunity. By allowing police officers to violate the law, we place our imprimatur on illegal behavior. Are we as a society and a Court willing to say the police officer did not comply with the law, but it does not matter? The answer to this question is apparently "yes." Countenancing unlawful behavior by the police constitutes the antithesis of the enforcement of the rule of law which we are sworn to uphold. I would not allow violations of law to go unchecked as decided by the majority, otherwise, there is no meaningful enforcement of the statutory safeguards that delineate the boundaries of a valid citizen's arrest. Simply put, if a "citizen's arrest" does not strictly comport with Idaho law, it is not a lawful arrest. Absent a lawful arrest, the evidence obtained as a result of that unlawful arrest should be suppressed.

For the reasons stated, I respectfully dissent from the majority's opinion. As a result, I would affirm the district court's decision to suppress the fruits of what is acknowledged by all as an arrest that did not comply with Idaho law.